472 S.E.2d 827

**Dennis BARTLES and Maria Bartles, Plaintiffs Below, Appellees,**

**v.**

**Morgan A. HINKLE, William P. Hinkle, and M. Pizza, Inc., Defendants Below.**

**Domino's Pizza, Inc., Defendant Below, Appellant.**

No. 23062.

Supreme Court of Appeals of West Virginia.

Submitted May 2, 1996.

Decided June 14, 1996.

384

Gilbert Wilkes, III, Wilkes & Associates, Martinsburg, West Virginia, Kenneth Behrend, Behrend & Ernsberger, Pittsburgh, Pennsylvania, for Appellees.

Walter M. Jones, III, E. Kay Fuller, Martinsburg, West Virginia, for Appellant.

CLECKLEY, Justice.

Domino's Pizza, Inc. (Domino's), one of the defendants below and the appellant herein, appeals the February 1, 1995, order of the Circuit Court of Berkeley County.[1] This order imposed a ten thousand dollar ($10,000) sanction against Domino's in favor of Dennis Bartles and Maria Bartles, the plaintiffs below and appellees herein. The trial court ordered the sanction after finding the defendant did not comply with discovery orders during the underlying case. On appeal, Domino's asserts the trial court abused its discretion and acted beyond its jurisdiction in imposing the sanction. For the following reasons, we affirm the trial court.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

The underlying action arose from an automobile accident on May 20, 1988, between Morgan A. Hinkle, an employee of M. Pizza, Inc., a Domino's franchisee, and the plaintiffs. The plaintiffs sued Morgan Hinkle; his father, William P. Hinkle; M. Pizza, Inc.; and Domino's, for personal injuries. The plaintiffs sought both compensatory and punitive damages. The trial court bifurcated the punitive damage issue of the trial and directed a verdict of liability against the defendant Morgan Hinkle. At the close of the trial, the jury found no liability against M. Pizza, Inc., or Domino's and returned no award on the contested damage issue.

In its February 1, 1995, order, the trial court found that prior to trial the plaintiffs filed three motions requesting the production of documents. According to a "TIME LINE" attached to Domino's brief, Domino's moved for a protective order on February 27, 1992. Domino's asserts it sought a protective order because the plaintiffs wanted certain documents, including internal writings and publications, many of which Domino's believed contained trade secrets. Domino's also insisted the plaintiffs sign a Confidentiality Agreement before Domino's turned over the requested documents.

It is apparent the Confidentiality Agreement became a source of contention between the parties. Domino's claims counsel for the plaintiffs stated in a telephonic hearing held on March 13, 1992, he had " 'no problem with the Confidentiality Order.' " Domino's then asked the trial court to enter the order so the documents could be produced. The trial court refused this request stating it would rather the parties appear in person to enter the order. Domino's contends it drafted an order on March 18, 1992, and it was clear to the parties the documents would not be produced until after the Confidentiality Agreement was executed. The plaintiffs state that

---

1. Following the death in August of 1994 of the Honorable W. Robert Abbot, who presided over the case below, the Honorable David H. Sanders entered the order on February 1, 1995, after he reviewed the transcript of the May 13, 1994, hearing and reviewed counsel's letters regarding the same.

on March 13, 1992, the trial court ordered Domino's to produce the documents.

On June 9, 1992, a pretrial hearing was held. At that hearing, Domino's motion for a protective order was discussed and, in part, was granted. However, Domino's states it insisted the Confidentiality Agreement be signed before the documents would be released. Domino's maintains the plaintiffs did not object to its version of the Confidentiality Agreement until June 10, 1992, when the parties met following the pretrial conference. It appears from the plaintiffs' brief that some documents were disclosed on June 9, 1992, and the plaintiffs discovered significant portions of those documents were redacted or blacked out of view. Therefore, on June 10, 1992, the plaintiffs claim they presented a "Motion to Compel Further Production of Documents and Sanction for Domino's wilful failure to comply with the [trial court's] Orders regarding the Production of Documents." The plaintiffs assert that, after hearing their motion, the trial court found Domino's was not in compliance and ordered and directed Domino's to immediately comply with the trial court's previous orders concerning discovery of documents. Moreover, according to the plaintiffs, a pretrial status conference was held on June 19, 1992, and, for a third time, the trial court ordered Domino's to produce the requested documents.

The version of the Confidentiality Agreement drafted by Domino's and at issue between the parties contained a provision stating the plaintiffs and their counsel could be subject to criminal sanctions if the order was violated. The plaintiffs sought to strike that provision. The plaintiffs state the trial judge was not from Berkeley County, where the trial was being held, and only would hold hearings from time to time when he traveled to the area. Thus, the plaintiffs claim the first opportunity they had to discuss the criminal sanctions provision with the trial judge was on June 22, 1992, the first day of trial.[2] Ultimately, the provision was removed and the Confidentiality Agreement

was executed on June 22, 1992. The plaintiffs state Domino's then provided them with 187 pages of documents, however, substantial portions of those pages were redacted.

The plaintiffs allege Domino's violated the trial court's order because it only was permitted to black out trade secrets which did not deal with its delivery policy and procedure and/or collisions. Therefore, on the second day of trial, the plaintiffs moved for sanctions. The plaintiffs assert that once again the trial court ordered Domino's to provide the documents, and the trial court scheduled an evidentiary hearing for June 25, 1992 (the fourth morning of trial), to discuss discovery issues. The plaintiffs state that on June 24, 25, and 27 Domino's produced about two thousand pages of documents in compliance with the previous orders. In their brief, the plaintiffs allege Domino's is in possession of other documents which should have been produced.

Domino's maintains the trial court's orders continually were expanded as time passed. Domino's insists it immediately complied with each expansion of the orders. At the June 9, 1992, pretrial hearing, the plaintiffs' request for Domino's "Operating Manual" was discussed. Domino's informed the trial court the manual contained information beyond the delivery policy at issue, and the trial court informed Domino's it could black out everything not pertaining to its thirty-minute delivery policy. After the Confidentiality Agreement was signed, Domino's provided the plaintiffs a redacted version of the manual.

Thereafter, on June 23, 1992, Domino's states the trial court enlarged its order to include the entire manual without regard to the fact the trial court previously held parts of the manual were not to be produced because of trade secrets. Plaintiffs told the trial court Domino's improperly excluded sections entitled "delivery; pre-shift setup; delivery; fast, free delivery; delivery time; delivery costs; friendliness and Domino's products/services." However, Domino's argues those sections were in the 1985 manual

---

2. Domino's claims the plaintiffs submitted their own version of the Confidentiality Order on June 18, 1992.

and not in the 1988 manual which was in effect at the time the underlying automobile accident occurred. Domino's attempted to explain the situation to the trial court but was told by the trial court "it couldn't be much different." Consequently, Domino's produced the entire manual.

Another issue discussed at the June 9, 1992, hearing was the plaintiffs' request for all writings over the past ten years dealing with pizza delivery automobile accident lawsuits naming Domino's as a defendant. The trial court ordered Domino's to run a computerized legal search to produce a list of cases. Domino's interpreted the request as a Westlaw search and explained to the trial court the search only would generate appellate decisions. Domino's apparently believed this search would be satisfactory to fulfill the trial court's order. However, Domino's asserts that, during the trial, the court expanded its decision (or at least Domino's interpretation of what it was supposed to produce) and ordered the Michigan law firm which monitors Domino's cases to create a document containing all trial court cases against Domino's.

Another document requested by the plaintiffs was the *Pepperoni Press*. Domino's states this document "is a newspaper style publication of approximately 25 pages per edition which has been published weekly for approximately 20 years." In its memorandum in support of a protective order, Domino's argues, in part, it would be cost prohibitive to copy all the editions, there were only limited copies available, and the information in the documents is irrelevant. Domino's alleges the trial court first ruled Domino's did not have to produce the editions because the information contained therein could be obtained from another source. Subsequently, Domino's states the trial court changed its ruling and Domino's had to accumulate copies of the publication and fly them to Martinsburg to be reviewed by plaintiffs' counsel over a weekend break.

Domino's asserts that throughout the plaintiffs' renewed discovery requests the plaintiffs also sought sanctions. The trial court deferred all rulings on sanctions until the verdict was rendered. After the jury returned its verdict awarding no damages to the plaintiffs, the plaintiffs filed a motion for a new trial. This motion was denied, so the plaintiffs filed an appeal with this Court. Attached to the appeal was the plaintiffs' third motion for sanctions. Their appeal to this Court was denied on April 21, 1993. Up until this time, the plaintiffs did not receive a final ruling from the trial court on the issue of sanctions. The plaintiffs continued to pursue sanctions at the trial court level after the appeal was denied by this Court.

The plaintiffs state the trial court encouraged the parties to resolve the sanctions issue between themselves, however, no amicable resolution could be met. On May 13, 1994, a hearing was held before the trial court. At that hearing, the trial court found, in part: [3] (1) the plaintiffs made three motions for the production of documents; (2) Domino's refused to produce certain documents unless the plaintiffs signed a Confidentiality Agreement which included criminal penalties for violation of the agreement; (3) the criminal penalty provision was stricken and Domino's produced some documents; (4) the plaintiffs found the documents did not comply with the trial court's order because some documents were not supplied while other documents were redacted which necessitated the plaintiffs filing another motion to compel the production of documents; (5) Domino's argued the redacted and blacked-out material were trade secrets, but subsequent discovery contradicted Domino's argument and showed the excluded material had nothing to do with trade secrets and, in fact, was damaging to Domino's; (6) the issue of sanctions remained with the trial court despite the appeal; and (7) "there was not much question in the [trial court's] mind that there was a system by Domino's Pizza Inc. to stall and delay production of the documents, which did cause hardship and inconvenience to the Plaintiffs." [4] Therefore, the trial court concluded as a matter of law that Domino's

---

3. These findings were entered in the February 1, 1995, order.

4. The trial court also found local counsel for Domino's was not responsible for noncompliance with the discovery orders.

willfully failed to comply, stone-walled, and purposefully stalled with regard to the discovery orders. In addition, Domino's redacted and blacked out areas without justification. The trial court found Domino's acted willfully and in bad faith and "took very little interest in trying to explain their inaction." For these reasons, the trial court imposed the $10,000 sanction against Domino's.

## II.

## DISCUSSION

On appeal, Domino's argues (1) the trial court lacked jurisdiction; (2) the trial court abused its discretion in awarding the $10,000 sanction for discovery violations because Domino's action did not amount to disobedience or misconduct; and (3) any violation of the discovery orders was excusable and did not prejudice the plaintiffs. We are persuaded the trial court did not abuse its discretion under these circumstances in resorting to the sanction. As the trial court stated: "As I remember what occurred, this was a complicated case and was pretty full of emotion on counsel on both sides, and we were all determined to try to get it to a jury." Indeed, the need for deterrence and the corresponding need for expeditious and orderly progress of the litigation were particularly pronounced in this case. Therefore, we affirm the decision of the trial court.

## A.

### Jurisdiction

Domino's argues the trial court lacked jurisdiction to entertain the issue of sanctions after this Court refused the plaintiffs' petition for appeal. The plaintiffs attached a motion for sanctions to the petition and, therefore, Domino's asserts the refusal of the petition is final and should have concluded all litigation. In its February 1, 1995, order, the trial court found the issue of sanctions was a collateral matter not directly related to the appeal which was denied by this Court. This issue need not detain us.

Of course, insofar as subject matter jurisdiction is concerned, both a trial court and an appellate court must be satisfied with their power to adjudicate in every case and at every stage of the proceedings. Courts are never bound by the acts or agreements of the parties. *James M.B. v. Carolyn M.,* 193 W.Va. 289, 456 S.E.2d 16 (1995). A trial court is deprived of jurisdiction only when it has entered a "final" order within the contemplation of W. Va.Code, 58–5–1 (1925), and the final order has been appealed properly to this Court. "The required finality is a statutory mandate, not a rule of discretion." *Province v. Province,* 196 W.Va. 473, 478, 473 S.E.2d 894, 899 (1996) (Slip. op. at 8). Our cases consistently hold a final order is one that " 'leaves nothing to be done but to enforce by execution what has been determined.' " *James M.B.,* 193 W.Va. at 292, 456 S.E.2d at 19. (Citation omitted).

At the time of the appeal, there remained pending in the trial court a viable motion. Under these circumstances, unless the trial court certified the issues pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure, it was this Court and not the trial court that lacked jurisdiction to act. It must be assumed that the petition for appeal was denied, in part, because this Court believed it had no appellate jurisdiction to hear the appeal. The initial appeal, as it stood before this Court, was "no different than it would be had the order complained of not been entered." *Baker v. Gaskins,* 124 W.Va. 69, 71, 19 S.E.2d 92, 93 (1942) (an order of a trial court rendering judgment for costs alone but not adjudicating the merits is not a final judgment).[5]

---

**5.** Domino's also suggests that this Court had before it the sanction issue and the rejection by this Court of the appeal was a rejection of plaintiffs' sanction request. Domino's presumably is relying on the "law of the case" doctrine. Law of the case principles do not bar a trial court from acting unless an appellate decision was issued on the merits of the claim sought to be precluded. *See Shore v. Warden, Stateville Pris-* on, 942 F.2d 1117, 1123 (7th Cir.1991), *cert. denied,* 504 U.S. 922, 112 S.Ct. 1973, 118 L.Ed.2d 573 (1992). Thus, when a dispositive procedural deficiency has obviated or deflected consideration of the underlying merits of a claim, the law of the case doctrine does not reach through the procedural ruling to enshrine a substantive determination never in fact made.

■ To be clear, a trial court cannot write its own jurisdictional ticket, but it must act within the confines of constitutional as well as statutory limits on its jurisdiction. In this case, we find the trial court possessed subject matter jurisdiction to decide the sanction issue. We hold the "rule of mandate," which is incorporated implicitly into W. Va.Code, 58–5–20 (1923), and W. Va.Code, 58–5–29 (1923), allows a trial court to decide anything not foreclosed by our appellate mandate. Under this rule, a trial court cannot give relief beyond the scope of our ruling, but it may act on matters left open by our final decision. We, therefore, proceed to the merits of this appeal.

### B.

*Standard of Review for the Imposition of Sanctions*

■ Discovery orders lie within the sound discretion of a trial court. *See* Syl. pt. 4, *Cox v. State*, 194 W.Va. 210, 460 S.E.2d 25 (1995).[6] The purpose of Rule 11 and Rule 37 of the West Virginia Rules of Civil Procedure is to allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances. *Cox*, 194 W.Va. at 218, 460 S.E.2d at 33. (Cleckley, J., concurring). Nevertheless, it is clear "[b]ecause of their very potency, ... [sanction] powers must be exercised with restraint and discretion.... A primary aspect of ... [a trial court's] discretion is the ability to fashion an *appropriate* sanction for conduct which abuses the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 2132–33, 115 L.Ed.2d 27, 45 (1991). (Citation omitted; emphasis added). A trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law. *Cox*, 194 W.Va. at 218 n. 3, 460 S.E.2d at 33 n. 3. (Cleckley, J., concurring).

■ It is hard to find an area of the law in which the governing rules are, and probably have to be, so vague. Admittedly, a trial court has broad authority to enforce its orders and to sanction any party who fails to comply with its discovery rulings. *Doulamis v. Alpine Lake Property Owners Ass'n*, 184 W.Va. 107, 399 S.E.2d 689 (1990); W.Va. R.Civ.P. 16(f) & 37(b)(2). The difficulty is that the range of circumstances is so vast, and the problems so much matters of degree, as to defy mechanical rules. Taken together, the cases set forth a list of pertinent considerations. Among those commonly mentioned are the public's interest in the expeditious resolution of litigation, the court's need to manage its docket, the severity of the violation, the legitimacy of the party's excuse, the repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of other sanctions. *See* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2370 (2nd ed. 1995). Mindful that case management is a fact-specific matter within the ken of the trial court, reviewing courts have reversed only for a clear abuse of discretion. A trial court's factual findings may not be set aside unless they are clearly erroneous. In particular, a trial court's credibility determinations are entitled to special deference.

■ The choice of imposition of sanctions for failing to comply with a court order lies with the trial court, and we will not lightly disturb that decision. Unless excused or the award is unjust, this Court leaves undisturbed an award of reasonable attorney's fees and costs caused by the failure of a party to comply with discovery orders. *See State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W.Va. 622, 425 S.E.2d 577 (1992) (attorney's fees may be imposed as a sanction in lieu of or in addition to any other sanction). On the appeal of sanctions, the question is not whether we would have imposed a more lenient penalty had we been the trial court, but whether the trial court abused its discre-

---

**6.** *See also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), *superseded by rule as stated in Photocircuits Corp. v. Marathon Agents, Inc.*, 162 F.R.D. 449 (E.D.N.Y.1995); *Stevens v. Lawyers Mutual Liability Ins. Co.*, 789 F.2d 1056 (4th Cir.1986); Syl. pt. 1, *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995); Syl. pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom., Camden Fire Ins. Ass'n v. Justice*, 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985).

tion in imposing the sanction. *See National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747, 751 (1976). It does not mean, however, that we will rubber stamp the sanction decisions of a trial court. Both Rule 16(f) and 37(b) of the Rules of Civil Procedure allow the imposition of only those sanctions that are "just." *See generally Cox v. State,* 194 W.Va. at 218, 460 S.E.2d at 33 (Cleckley, J., concurring); *State Farm Mut. Auto. Ins. Co., supra.*

█ There is also a procedural dimension. Although Rules 11, 16, and 37 of the Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. A court also must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct. *Cox,* 194 W.Va. at 218, 460 S.E.2d at 33. (Cleckley, J., concurring). In formulating the appropriate sanction, a court shall be guided by equitable principles. *See e.g. Hillig v. Comm'r of Internal Revenue,* 916 F.2d 171, 174 (4th Cir.1990). Initially, a court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 74 (3rd Cir.1994). As we suggested earlier, to determine what will constitute an appropriate sanction, a court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case. *Cox,* 194 W.Va. at 218–19, 460 S.E.2d at 33–34. (Cleckley, J., concurring). Although evidence of similar conduct in other cases may show the absence of mistake or accident of a party, a trial court cannot sanction a party for conduct exhibited in cases not before the court. On the other hand, counsel's disregard of a prior warning from the court in the same case exacerbates the offense, as the lack of warning sometimes mitigates against

it. Ordinarily, a plaintiff is given an opportunity to explain the default or to argue for a lesser penalty, but, again, there is no mechanical rule.

█ The party seeking sanctions under Rule 37(b) has the burden of proving noncompliance with a discovery order. If established, the burden of proof shifts to the noncompliant party to demonstrate either that it was unable to comply or that special circumstances exist which make the imposition of sanctions unjust. Syl. pt. 3, *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom., Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985). *See also Falstaff Brewing Corp. v. Miller Brewing Co.,* 702 F.2d 770, 784 (9th Cir.1983) ("[t]he party against whom an award of expenses is sought has the burden of showing the special circumstances that make his or her failure to comply substantially justified"). If it is demonstrated that a noncompliant party intentionally or with gross negligence failed to obey a court order, the full range of sanctions under Rule 37(b) is available to the court. Syl. pt. 4, *Bell, supra;* Syl. pt. 2, *Smallwood v. Raleigh General Hosp.,* 194 W.Va. 48, 459 S.E.2d 159 (1995). A party cannot be sanctioned, however, if the underlying discovery order is shown to be invalid. *State Farm Mut. Auto. Ins. Co.,* 188 W.Va. at 631, 425 S.E.2d at 586.

In the present case, Domino's asserts the documents sought by the plaintiffs went solely to the issue of punitive damages and, because the trial was bifurcated, this aspect of the trial was eliminated when the jury returned a verdict awarding no compensatory damages. *See Garnes v. Fleming Landfill, Inc.,* 186 W.Va. 656, 667, 413 S.E.2d 897, 908 (1991), *overruling* Syl. pt. 3, *Wells v. Smith,* 171 W.Va. 97, 297 S.E.2d 872 (1982), "to the extent that it stands for the proposition that a jury may return an award for punitive damages without finding *any* compensatory damages." (Emphasis in original). Therefore, even if there were discovery violations, Domino's contends the plaintiffs were not impeded in the presentation of their case and, under the circumstances, the issue of

nondisclosure is moot and cannot give rise to either sanctions or a new trial. The plaintiffs disagree with the characterization of the evidence it sought through discovery and argues the evidence was relevant to the issues in the trial of this case.

It is hard to view Dominos' argument as anything but disingenuous. Regardless of whether the materials the plaintiffs requested were to be used during the first or second half of the bifurcated trial, Domino's defiance of the trial court's orders constituted an independent wrongful action upon which sanctions may be issued. We are not dealing with the issue of a new trial under Rule 59 of the Rules of Civil Procedure. Of course, the Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Here, due process concerns are not implicated because there is a close nexus between Domino's misconduct and the merits of the case. More importantly, sanctions under a court's inherent powers are justified in response to abusive litigation conduct and to insure the orderly administration of justice and the integrity of the court's order. Domino's cannot relieve itself of its legal obligation to adhere to the Rules of Civil Procedure because the plaintiff was unsuccessful in obtaining compensatory damages.

To hinge a court's authority to issue a sanction for the violation of a discovery order on the outcome of the underlying action would defy logic and wreak havoc in the administration of justice. Whether the timely and complete release of the documents would have changed the outcome of the trial is not the issue in determining prejudice for sanctions. It is enough if the violation merely *threatens* to interfere with the rightful decision of the case. Where documents relevant to the merits of the litigation are concealed or their delivery delayed, it is appropriate to presume the deception or delay casts doubt on the concealing party's case. We squarely reject the notion that a failure to comply with the rules of discovery is purged by belated compliance. The last minute tender of documents does not cure the prejudice to the opponents nor does it restore to other litigants on a crowded docket the opportunity to use the court.

Domino's argues the trial court abused its discretion by imposing the sanction for its noncompliance with discovery orders because the trial court continuously was expanding or vacating its prior rulings. Consequently, Domino's asserts it "was forced to play 'catch up'" each time the trial court reversed a prior decision. Moreover, in spite of this disadvantage, Domino's states it made every effort to comply with each order issued. Domino's basic argument is that it should not be punished for the trial court's indecisiveness. Domino's further alleges the trial court's findings are without analysis and support and, therefore, should be reversed.

At the May 13, 1994, hearing on the sanctions, the trial court concluded there was clear evidence Domino's practiced a pattern of "stonewalling" and exhibited a "willful failure to comply with the legitimate [court] orders[.]" The trial court found Domino's deliberately stalled discovery until the materials sought by the plaintiffs were of little value once they were disclosed. The trial court determined certain documents were redacted to the point "they were not legible or didn't make any sense" and Domino's claim of "industrial secrets," which it argued necessitated redacting certain information, was without "any apparent justification insofar as anything that any other company could use when the full document was finally received from time to time." In this regard, the trial court said it was convinced Domino's acted in a "willful manner" and in "bad faith[.]" At one point during the hearing, the trial court announced Domino's practice of "stonewalling" and "not delivering ... material quickly enough so that counsel for the Plaintiffs had adequate time to absorb it and to make use of it in the case" was so clear in the record it was "established in concrete." Finding sufficient evidence of noncompliance, the trial court stated the burden of proof shifted to Domino's for it to justify its actions, but the trial court found Domino's took "very little interest in trying to explain [its] inaction"

and it failed to meet its burden of proof. Therefore, the trial court granted the plaintiffs' motion for sanctions.

Upon review of the record before this Court, we cannot hold the trial court abused its discretion by issuing the sanction against Domino's. To the contrary, we believe the record leads inexorably to the conclusion reached by the trial court. On appeal, Domino's raises numerous justifications to explain why it failed to comply with the trial court's orders; however, Domino's failed to raise a single one of these justifications during the May 13, 1994, hearing when the trial court was deciding the sanction issue.[7] Indeed, as previously mentioned, the trial court stated that Domino's took "very little interest in trying to explain their inaction." The only relevant matter discussed in the hearing transcript was Domino's assertion the trial court did not have jurisdiction to impose sanctions because of this Court's prior denial of the petition for appeal of the underlying case. Thus, the need for a remand is not evident. The trial court found Domino's was at fault. Therefore, the monetary sanction was clearly within the trial court's discretion. Again, it is only on appeal that Domino's offers excuses for all these episodes. Had Domino's launched a factual attack below and the trial court failed to make specific findings to resolve the factual dispute, we would remand with specific directions.

■■■ We emphatically reject any notion that a monetary sanction is inappropriate in the absence of a showing of prejudice, such as the loss of evidence or a witness.[8] In our view such a specific showing of prejudice would aggravate the misconduct, but it is not necessary to justify the imposition of a monetary sanction. Repeated disobedience of a scheduling order is inherently prejudicial because disruption of the court's schedule and the preparation of other parties nearly always results. The pattern of behavior reasonably can be construed as an indication of Domino's lack of interest in vindicating whatever rights or defenses it might have had. The repetition involved in their inaction suggests conduct of a deliberate rather than an inadvertent nature. The sanction in this case finds specific justification because the recovering attorneys had to expend time and effort unnecessarily merely to get Domino's to comply with a discovery order of the court.

Likewise, we do not find the sanction to be too severe in these circumstances. We underscore again that the trial court imposed the lesser of all sanctions. There might be some merit to Domino's position if the sanction imposed was that of default, but even then, it would be excessive only if we were faced with a single instance of careless conduct. A succession of violations, however, indicating a general unwillingness to comply with a court-imposed scheduling order, is enough for us even to justify a default. Calendars are simply too crowded for parties to treat scheduling and discovery orders as optional and to conduct preparations at their own convenience. Not only did the trial court find willful disobedience of its order, but Domino's arrogated control of discovery for itself and changed the date of compliance

7. In this instance, our main concern is that, despite an apparent pattern of noncompliance by Domino's, no factual disputes exist over the extent of the misconduct because Domino's failed to present the issues they now raise to the trial court at the hearing on May 13, 1994. If we were dealing with a dismissal of a lawsuit or the entrance of default judgment rather than a monetary sanction, procedural deficiencies would, of course, be entitled to more weight. Here, however, we deal only with one of the lesser sanctions that can be imposed for discovery violations.

8. Admittedly, decisions around the country send conflicting signals as to whether prejudice to a party moving for sanctions must be demonstrated. While some opinions refer to prejudice as "purely optional" and "not required" but an important factor, other opinions describe prejudice as a "key factor" and "essential." We decline to enter the fray over whether legal prejudice is or is not required. The record supports the conclusion that the plaintiffs were prejudiced by Domino's suppression of the requested documents. As suggested above, a plaintiff suffers prejudice if a defendant's actions impair the plaintiff's ability to go to trial or threaten to interfere with the rightful decision of the case. The trial court found the plaintiffs were burdened unnecessarily by pursuing discovery that should have been given to them earlier pursuant to the court's order. We accord substantial deference to the trial court's findings and conclusions as, having presided over the trial, the trial court is in the best position to access prejudice.

to suit its own convenience. If such conduct was condoned by a slap on the wrist, the trial court might well find the lawyers and their clients calling the time of discovery schedules. "The day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience." *Damiani v. Rhode Island Hospital,* 704 F.2d 12, 16 (1st Cir.1983).

▉ The absence of a prior warning that the court was considering sanctions may be a pertinent factor in evaluating a sanction, especially if the conduct in question did not violate a clearly preexisting requirement. In this case, we find the directives of the trial court to be clear and by its terms the trial court required Domino's to act timely. A court need not provide warning that a sanction will result from repeated violations of such an order. Also, a trial court is not necessarily required to take less severe action before imposing a harsher sanction.

▉ In determining the amount of sanctions to award the plaintiffs, the trial court made the following remarks:

"I have examined and gone through the itemized bills which [were] submitted in connection with the Motion for Sanctions, and I do fully realize that when one reviews this, it looks like a tremendous amount of time spent just on this particular subject.

"But taking into consideration the punitive aspect in the attorney's fees, I'm going to award the sum of $10,000."

We find no error in the trial court's application of the facts and the law in awarding attorney's fees. The award of attorney's fees was in the nature of a sanction against Domino's. Rule 37 recognizes that the normal limitation on the recovery of attorney's fees does not apply to claims of fees awarded as a sanction. In Syllabus Point 7 of *State Farm*

*Mutual Automobile Insurance Co., supra,* we explicitly stated:

"Under Rule 37(b)(2)(E) of the West Virginia Rules of Civil Procedure, a court *shall* require a party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure. This provision allows attorney's fees to be excused unless the failure was substantially justified or such an award would be unjust. The rule clearly states that such sanctions may be imposed in lieu of or in addition to any other sanctions." (Emphasis added).

We are satisfied that the award given here was well within the trial court's discretion. To be specific, for purposes of appellate review, an attorney's fee awarded as a sanction that explicitly is authorized by the Rule 37(b) rests in the sound discretion of the trial court, and the exercise of that discretion will not be disturbed on appeal except in cases of abuse. The trial court carefully scrutinized the assessment of attorney's fees in the amount of $10,000, and we find no abuse of discretion in its judgment.[9]

Visiting the sins of attorneys on the client is inherent in the nature of the adversary system. Although we should be reluctant to impute the misconduct of counsel to the client in cases where there have been only relatively minor instances of disobedience,[10] we have less reluctance here where the trial court found a need for expedition and expressly stated "there is not much question that there was a system by [Domino's] itself, not the counsel, to stall and kind of fire and fall back, delay and not get this information out, and that it was an inconvenience to this Plaintiff."

### III.

### CONCLUSION

The trial court did not err in holding the actions of Domino's constituted willful mis-

**9.** The equities weigh heavily against Domino's in this case. Not only have the plaintiffs endured expenses, time, and effort as a result of the discovery violations, they have incurred additional expenses, efforts, and expenses to defend against this unsuccessful appeal. Under these circumstances, we believe the $10,000 fee is well deserved. In their brief, the plaintiffs ask this Court to grant them a new trial or enter a greater amount of sanctions. The plaintiffs' claims likewise are denied. The adage "to leave well enough alone" has particular force in this case.

**10.** *See Cox,* 194 W.Va. at 220 n. 6, 460 S.E.2d at 35 n. 6. (Cleckley, J., concurring).

conduct and an abuse of the discovery rules. Domino's has not persuaded us that the monetary amount of the sanction was excessive, and, thus, we affirm the ruling of the Circuit Court of Berkeley County granting a sanction in the amount of $10,000.

Affirmed.