600 S.E.2d 196

Margaret ANDERSON, as Personal Representative and Administratrix of the Estate of Matthew Sean Walker, deceased Plaintiff Below, Appellant,

v.

Chandrasekhar KUNDURU, M.D., Prakob Srichai, M.D., Vellaiappan Soma, M.D., Appalachian Regional Healthcare, Inc., d/b/a Man Appalachian Regional Hospital, Charleston Area Medical Center, Inc., and Manuel Caceras, M.D., Defendants Below, Appellees.

No. 31628.

Supreme Court of Appeals of West Virginia.

Submitted: June 8, 2004.

Filed: July 6, 2004.

David S. Skeen, Esq., South Charleston, for Appellant.

Dina M. Mohler, Esq., Charleston, for Appellee Charleston Area Medical Center, Inc.

Kevin A. Nelson, Esq., Robert P. Welsh, Esq., Kay Casto & Chaney, PLLC, Charleston, for Appellee Caceres.

Debra A. Nelson, Esq., Mundy & Nelson, Huntington, for Appellees Kunduru and Srichai.

Ann L. Haight, Esq., Kay, Casto & Chaney, PLLC, Charleston, for Appellee Appalachian Regional Healthcare, Inc.

## PER CURIAM.

In this appeal from the Circuit Court of Logan County, we are asked to examine a situation where an attorney failed to produce the report of an expert designated as a witness in a medical malpractice trial. The attorney's failure resulted from the ineffectiveness of the attorney, not his client. The circuit court, however, imposed sanctions against the client in the form of an order striking the testimony of the expert witness, and later an order granting summary judgment because, in the absence of the expert's testimony, there was no genuine issue of material fact on the standard of care.

As set forth below, we reverse the circuit court's orders. While the circuit court was clearly within its discretion to impose sanctions, those sanctions should have been imposed to the detriment of the offending attorney and not the attorney's client.

### I.

In the early-morning hours of November 1, 1999, five-year-old Matthew Sean Walker was found by his parents after an episode of nausea, vomiting, and diarrhea. Matthew had apparently exhibited symptoms of only a mild cold in the previous days, but had in the past been treated for bronchial asthma. His parents took their son to the emergency room of appellee Man Appalachian Regional Hospital, arriving at 8:30 a.m.

Physicians in the emergency room suspected that Matthew might be suffering from bronchial asthma, but also wanted to investigate the possibility of sepsis (a generalized poisoning of the body caused by an infection). Matthew was given oxygen, antibiotics, and other bronchial asthma treatments and he apparently responded well. However, he continued to be in respiratory distress. The emergency room physicians contacted appellee Charleston Area Medical Center, and

made arrangements to transfer Matthew to Charleston by ambulance.

Matthew's parents contend that their son was getting color into his face, was feeling better, but that he kept taking his oxygen mask off. The emergency room physicians contend that Matthew's blood gas levels and respiratory condition continued to deteriorate. So, at 11:00 a.m., the decision was made by appellee Dr. Prakob Srichai to intubate Matthew with an endotrachial tube.

At 11:00 a.m., and again at 11:01 a.m., injections of five milligrams of diazepam (also known as Valium) were given to Matthew to prepare him for the intubation procedure. By 11:30 a.m., it appears that Matthew's blood pressure—which doctors had had difficulty obtaining earlier in the morning—was altogether unobtainable. The emergency room doctors immediately contacted Health-Net, seeking a helicopter to transport the child by air to Charleston.

A helicopter arrived at approximately 11:45 a.m., and the helicopter crew assumed Matthew's care. Matthew was apparently moving during this time period, but was responding only to painful stimuli. The helicopter departed Man at 12:32 p.m. From the time Matthew arrived in Charleston at 12:55 p.m., doctors attempted life-saving procedures. His condition continued to deteriorate, and he died at 3:23 p.m.

Matthew's parents immediately suspected a medical error had occurred in the dosage of medication given to Matthew in the Man emergency room. An autopsy was performed of the child's chest and abdomen which revealed several hemorrhages that the investigating doctor construed as showing that the cause of death was sepsis. However, the cause of the sepsis was undetermined because no evidence of pneumonia or other focal infection could be found.

Matthew's parents contacted a lawyer, who then had the medical records reviewed by several experts. A pharmacologist concluded that the appellees' prescribed dose of diazepem for Matthew was, essentially, too much,

given too fast, and given too frequently. The pharmacologist opined that Matthew should have been given no more than 3.75 milligrams of diazepem (not five milligrams); each shot should have been slowly injected over a three-minute period (not given instantaneously); and the shots should have been spaced at least fifteen minutes apart (not one minute apart). The pharmacologist believed that this error, combined with the appellees' later error of not giving Matthew drugs to reverse the effect of diazepem, caused his death.[1]

Another doctor, Dr. William A. Cox, examined the records and similarly concluded that Matthew had been given an excessive amount of diazepem too quickly over too short a time period. Dr. Cox also concluded that other drugs were administered that compounded the problems caused by the diazepem. Lastly, Dr. Cox gave the opinion that the hemorrhages and other injuries revealed by the autopsy of Matthew's chest and abdomen were the result of the hypotension (or low blood pressure) caused by the diazepem—and not the result of sepsis or some infection. In sum, he concluded that the appellees owed a duty of care to Matthew, and that the breach of that standard of care caused Matthew's death.

The appellant, who is the administrator of Matthew's estate, filed the instant case on June 16, 2000, alleging that the various appellees who treated Matthew had been negligent, and the appellees were advised in September 2001 that Dr. Cox and other experts intended to offer opinions in the case. There were numerous procedural delays in the case, but on May 16, 2002, the circuit court entered a time frame order mandating that the appellant disclose her expert witnesses by September 16, 2002. In compliance with the circuit court's order, the appellant again identified Dr. Cox as an expert.

It appears, however, that the appellant's counsel, David Skeen, had delegated responsibility for communicating with Dr. Cox to a

---

1. The appellees dispute these conclusions, asserting that while a pharmacologist may be perfectly capable of determining the proper textbook, FDA-approved dosage of a drug, he or she is not qualified to render an opinion as to the real-world usage of the drug by an emergency room physician.

paralegal—and shortly after Dr. Cox was disclosed as an expert, the paralegal terminated her employment. The circuit court's time frame order required that the appellant disclose her expert reports by October 16, 2002. Mr. Skeen obtained reports from two experts, but not Dr. Cox—and for inexplicable reasons, did not forward those reports to counsel for the appellees. Mr. Skeen claims that he was unable to speak with Dr. Cox until November 4, 2002, and advised Dr. Cox he needed to obtain a report from him as soon as possible.

Dr. Cox responded to Mr. Skeen's office over the Thanksgiving holiday, and indicated that Mr. Skeen's paralegal had, in a June 2001 telephone conversation, discharged Dr. Cox as an expert. As a result of this, Dr. Cox did not keep his notes of his examination of Matthew's medical records, and did not prepare a final report. Mr. Skeen then forwarded copies of reports from his other two experts to appellees' counsel, and asked the circuit court for an extension of time to produce Dr. Cox's report.

On December 2, 2002, the circuit court gave Mr. Skeen until December 20th to produce Dr. Cox's report. Mr. Skeen contends that he immediately informed Dr. Cox that he had until December 17th to produce and forward his expert report to Mr. Skeen. Mr. Skeen then claims he made several attempts to contact Dr. Cox and finally spoke to his wife, only to learn Dr. Cox was out of town on a family emergency and would not be available until January 3, 2003. On December 24, 2002, Mr. Skeen filed another motion for an extension of time to produce Dr. Cox's report.

Dr. Cox forwarded a copy of his formal report to Mr. Skeen, who produced the report to appellees' counsel on January 9, 2003. The appellees had, by this time, already filed motions to exclude Dr. Cox as a witness, and on January 24, 2003, the circuit court granted the motion.

The appellees also filed motions for summary judgment. The circuit court granted those motions in an order dated February 14, 2003. The circuit court concluded that a genuine question of material fact existed regarding the appellees' standard of care, but

that the appellant—in the absence of Dr. Cox's testimony—no longer had any expert evidence of the standard of care or its breach.

The appellant now appeals the circuit court's January 24, 2003 order striking Dr. Cox as a witness, and the circuit court's February 14, 2003 summary judgment order.

## II.

■ So that judges may run their courtrooms effectively, this Court will accord judges broad discretion in the use of sanctions under the *Rules of Civil Procedure:*

> The imposition of sanctions by a circuit court under *W. Va. R. Civ. P.* 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion.

Syllabus Point 1, *Bell v. Inland Mut. Ins. Co.,* 175 W.Va. 165, 332 S.E.2d 127, *cert. denied sub nom. Camden Fire Ins. Ass'n v. Justice,* 474 U.S. 936, 106 S.Ct. 299, 88 L.Ed.2d 277 (1985). However, the judge's discretion is not without limit: "We grant circuit court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law[.]" *Lipscomb v. Tucker County Comm'n,* 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

## III.

The appellant in this case contends that the sanction imposed by the circuit court was too harsh. Mr. Skeen asserts he made good faith efforts to acquire and produce Dr. Cox's report, but errors by his office staff—for which he takes responsibility—and by himself delayed the report's production. Mr. Skeen concedes that under Rule 37 of the *West Virginia Rules of Civil Procedure,* a circuit court may impose sanctions against a party who refuses to comply with discovery rules, but asserts that a wide spectrum of sanctions is available beyond striking a witness, including admonishments to counsel

and monetary sanctions against the offending attorney. Rule 37(b)(2) provides:

(2) Sanctions by Court in Which Action is Pending. If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders as are listed in subparagraphs(A), (B), and (C) of this paragraph, unless the party failing to comply shows that that party is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Counsel for the appellant concedes that his errors were the cause of the delay in producing Dr. Cox's report, and essentially argues that the harsh sanction of excluding Dr. Cox operates primarily to punish his innocent client. He asserts that the circuit court's decision to strike Dr. Cox was neither just nor fair under the circumstances, particularly when that decision operated to deny the appellant her day in court by supporting the circuit court's later decision to grant summary judgment to the appellees. We agree.

■ This Court has previously indicated that a circuit court must, before sanctioning a party, ensure that there exists a relationship between the "sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct." Syllabus Point 1, *Bartles v. Hinkle,* 196 W.Va. 381, 472 S.E.2d 827 (1996). In the instant case, the circuit court essentially imposed a sanction upon a party—appellant Anderson—for the admittedly sole misconduct of the party's attorney. By excluding Dr. Cox's testimony, the circuit court excluded what little evidence the party's attorney had compiled on a critical issue in the case, and thereby eviscerated the party's entire cause of action.

■ The record plainly reveals the circuit court's frustration with Mr. Skeen, who admitted he had consulted with Dr. Cox in March 2001, but still had not obtained a formal, written report from him some sixteen months later. The record evidences numerous, pointless delays in bringing this case before a jury, delays that were likely costly to the appellees. The circuit court was fully within its rights to discharge its frustration in the form of sanctions under Rule 37. However, our *Rules of Civil Procedure* are, first and foremost, to be construed in a manner that "secure[s] the just, speedy, and inex-

pensive determination of every action." *W.Va.R.Civ.Pro.* Rule 1 [1998]. Accordingly,

In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

Syllabus Point 2, *Bartles v. Hinkle,* 196 W.Va. 381, 472 S.E.2d 827 (1996).

■ The circuit court in the instant case clearly identified the misconduct of Mr. Skeens in repeatedly missing the court's deadlines, and was within its discretion to determine that the conduct warranted a sanction. However, the record in the instant case shows that the conduct was entirely the fault of Mr. Skeens, and not his client. Fairness dictates that any sanction should have been directed against the actor—or, in this case, the "in-actor"—and the sanction imposed in a manner that would best dispel any cost or prejudice to the opposing parties. For instance, the circuit court could have postponed the trial date, giving the appellees greater time to depose Dr. Cox and prepare their evidence in rebuttal, and impose the costs of the delay (like in the form of rescheduled plane tickets for appellees' experts, appellees' attorney costs in compelling the appellant to produce her evidence, supplemental expert reports that had to be prepared as a result of the delayed production, and so on) upon counsel for the appellant. Justice compels that the offending attorney should suffer for his actions, not the litigants.

Accordingly, we conclude that the circuit court abused its discretion in striking the testimony of Dr. Cox. The circuit court's January 24, 2003 order doing so must therefore be reversed.

As for the circuit court's February 14, 2003 order granting summary judgment, the record reveals that—at the time—Dr. Cox was the only expert who the appellant had retained who could testify as to the appellees' standard of care, and the breach of that standard of care. Because the circuit court's dismissal of Dr. Cox's opinion eviscerated the appellee's case and set the stage for the summary judgment order, that order too must be reversed.[2]

### IV.

The circuit court's January 24, 2003 and February 14, 2003 orders are reversed, and the case is remanded for further proceedings.

Reversed and Remanded.

---

2. The record suggests that, when the appellant encountered problems with procuring a report from Dr. Cox in November 2002, her counsel retained another expert on the standard of care. The parties continue to dispute whether any of their opponents' experts are qualified to render opinions on any issue. In light of these conflicts, on remand, the circuit court should enter a time frame order allowing the parties some reasonable time to again list their experts, produce those experts' reports, and allow time to depose those experts in preparation for trial. At the same time, the circuit court should reconsider the format of sanctions against counsel for the appellant.