**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

Margaret L. Reeves, Administratrix of the
Estate of Pamela Sue Reeves,
Plaintiff Below, Petitioner

**vs.)  No. 20-0353** (Wood County 17-C-53)

Camden Clark Memorial Hospital Corporation and
Adam Kaplan, M.D.,
Defendants Below, Respondents

**MEMORANDUM DECISION**

Petitioner Margaret L. Reeves, by counsel David H. Carriger, Richard D. Lindsay, and Richard D. Lindsay II, appeals the order of the Circuit Court of Wood County, entered on May 6, 2020, denying her motion to alter or amend the circuit court's judgment, which was set forth in the circuit court's order entered on June 5, 2019.[1] Respondent Camden Clark Memorial Hospital Corporation ("Camden Clark") appears by counsel Christine S. Vaglienti, Carlie M. Lacy, and Mark A. Moses. Respondent Adam Kaplan appears by counsel Edward C. Martin and Ryan A. Brown.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Reeves, as administratrix of the estate of her daughter Pamela Reeves ("the decedent"), filed a complaint for wrongful death under the state's Medical Professional Liability Act in the Circuit Court of Wood County in February of 2017. Ms. Reeves asserted that the decedent died as a result of a hypoxic brain injury following a hysterectomy, subsequent laparotomies, and intubation in 2016. The trial was initially scheduled for September of 2018, and Ms. Reeves was directed (under an extension granted by the court) to disclose expert witnesses by December 1,

---

[1] Ms. Reeves's counsel's actions before the circuit court are central to the issues discussed in this decision. There is no indication that Ms. Reeves's appellate attorneys played a part in the problematic discovery described herein.

1

2017. On that date, Ms. Reeves (through a supplement to an earlier disclosure) explained that she had retained three expert witnesses, all general surgeons, who would testify to a reasonable degree of medical certainty that respondents

> deviated from the standard of care by negligently failing to properly treat and suture [the decedent's] surgical incision following her . . . procedure as it continued to bleed and therefore required additional surgery; negligently failing to apply a tension free repair; and negligently failing to prevent and/or preclude the decedent's respiratory arrest/failure.

In response to the disclosures, Camden Clark filed a motion to compel a summary of the ground for each opinion, including a statement on the standard of care.

A little more than one month after providing her disclosure, Ms. Reeves voluntarily dismissed the surgeon she earlier named as a defendant. She filed an amended complaint in April of 2018 (more than a year after the filing of the initial complaint), naming Dr. Adam Kaplan, a general surgeon who cared for the decedent while she was hospitalized on the weekend preceding her death. In the amended complaint, Ms. Reeves asserted that Dr. Kaplan failed to diagnose and address decedent's "deteriorating condition [in the two days that she was under his care] . . .; specifically, Dr. Kaplan negligently failed to consider [decedent's] hemoglobin and hematocrit levels in the setting of her failure to recover from surgeries. . . ." The decedent was found unresponsive soon after Dr. Kaplan's shift ended, and she died six days later.

Pursuant to an amended scheduling order entered on July 20, 2018, Ms. Reeves was to identify her trial experts by October 1, 2018, with details of the experts' expected testimony by October 31, 2018. The trial had, by this point, been delayed to March of 2019. Ms. Reeves identified a single medical expert, Dr. Bruce Charash, as an expert in cardiology and internal medicine, then provided this summary of his anticipated testimony on the final date:

> Dr. Charash is expected to testify to a reasonable degree of medical certainty that Adam Kaplan, M.D. and Camden Clark Memorial Hospital, by and through its agent, servants and/or employees; negligently fell below the standard of care by failing to properly remove and reattach the abdominal binder that was placed after [the decedent's] surgery. Specifically, Dr. Charash will testify that said abdominal binder was attached too tightly and/or incorrectly and that [respondents] failed to notice or remedy the problem.[2] Dr. Charash will further testify that such negligence was a proximate cause of her cardiac arrest and, ultimately her death.

---

[2] The abdominal binder (a compression belt to assist with recovery) referenced in this disclosure was applied by, or at the direction of, the decedent's surgeon after the decedent underwent a second laparotomy, on July 15, 2016. Several Camden Clark nurses testified that they checked, removed, or reattached the abdominal binder while the decedent was hospitalized following the second laparotomy. There is no evidence that Dr. Kaplan personally adjusted or applied the binder.

The discovery deadline was January 18, 2019. Dr. Kaplan requested the deposition of Dr. Charash by letters dated October 16, November 7, November 16, December 3, and December 11, 2018, and Camden Clark requested the deposition by letter dated December 12, 2018, but Ms. Reeves' counsel did not respond to the requests. Dr. Kaplan filed a motion to compel Dr. Charash's deposition on January 2, 2019. Ms. Reeves then agreed to produce Dr. Charash on February 5, 2019. Ms. Reeves cancelled this deposition the day before it was to occur and rescheduled the deposition to February 21, 2019.

When Dr. Charash's deposition was finally conducted on February 21, 2019, he testified that he did not receive (or, therefore, review) Ms. Reeves' expert witness disclosure until the night before his deposition. Dr. Charash stated that the disclosure contained a "highly incomplete" representation of his opinion. He explained that he had spoken to Ms. Reeves's counsel for the first time since reviewing the decedent's records on the day preceding his deposition. The prior day's conversation, he confirmed, was the first occasion that he spoke to counsel since reviewing the file. Dr. Charash explained that the application of the abdominal binder was a factor contributing to the decedent's "respiratory arrest from the restriction in her breathing and the pharmacotherapy that she received." When asked if the binder caused cardiac arrest, he testified, "[n]o, respiratory. . . this was a primary respiratory arrest based on several factors." He testified that doctors should have used a continuous pulse oximeter to monitor for reduction of oxygen saturation. Counsel for both respondents advised that they reserved the right to leave the deposition open, but they elected not to continue at that time because Dr. Charash was expressing opinions not previously provided.

Both respondents filed pretrial motions asking the circuit court to exclude Dr. Charash's testimony. Within a few days of the filing of those motions, the associate attorney primarily assisting Ms. Reeves resigned suddenly from the law firm that represented her. The circuit court ultimately stayed the scheduling order until the thirtieth day after the conclusion of the state's 2019 legislative session pursuant to West Virginia Code § 4-1-17, which excuses a legislator's appearance from administrative and judicial tribunals while he or she is engaged in certain legislative duties, because one of the firm's principle attorneys was a West Virginia state senator who notified the circuit court that he required a stay of proceedings. The trial date was cancelled.

The circuit court granted respondents' motions to exclude Dr. Charash's testimony on June 5, 2019. In its order, the circuit court noted that Dr. Charash "testified to a new, previously undisclosed standard of care and causation opinion[,]" at his deposition and that the opinions he offered were inconsistent with the amended complaint. The court noted that discovery had been conducted and six nurses had been deposed on the theory of cardiac arrest. The court specifically found that Ms. Reeves's counsel offered Dr. Charash's opinions without input from Dr. Charash and the disclosure was, therefore, made in bad faith. The court concluded that, because the exclusion left Ms. Reeves with no medical basis for her claims, a grant of summary judgment to both respondents was appropriate. Ms. Reeves filed a motion to alter or amend judgment pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. The circuit court denied the motion by order entered on May 6, 2020.

On appeal, Ms. Reeves presents three assignments of error. She argues, first, that the circuit court erred in imposing the extreme sanction of excluding her expert witness rather than imposing

a less-severe sanction because, with no pending trial date, there was time to cure any prejudice to respondents. She argues, second, that even if he is precluded from offering evidence concerning Dr. Kaplan's part in the application of the abdominal binder, Dr. Charash could offer testimony about Dr. Kaplan's failure to order pulse oximetry monitoring of the decedent. She argues, finally, that the circuit court erred in denying her motion to alter or amend the court's judgment made pursuant to Rule 59(e) of the West Virginia Rules of Civil Procedure. "The standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. Pt. 1, *Wickland v. American Travellers Life Ins. Co.*, 204 W. Va. 430, 513 S.E.2d 657 (1998).

Ms. Reeves's assignments of error attack the circuit court's order excluding the testimony of Dr. Charash, which is tantamount to a sanction for litigation conduct. "The imposition of sanctions by a circuit court under W. Va. R. Civ. P. 37(b) for the failure of a party to obey the court's order to provide or permit discovery is within the sound discretion of the court and will not be disturbed upon appeal unless there has been an abuse of that discretion." Syl. Pt. 1, *Bell v. Inland Mut. Ins. Co.*, 175 W. Va. 165, 332 S.E.2d 127 (1985). We find that the circuit court exercised sound discretion in excluding Dr. Charash's testimony, and there is no reversible error.

Ms. Reeves supports her first and third assignments of error with the same argument, and we consider those assignments together. She does not dispute that she provided respondents a misleading or inaccurate summary of Dr. Charash's opinion but argues instead that the circuit court's sanction was extreme because "no trial date was pending" when the court excluded the testimony. She further maintains that the court erred in finding that her counsel acted in bad faith, but the court nevertheless could have sanctioned her counsel in some manner that did not affect the pendency of her claims.

We note that the trial date was cancelled only after Ms. Reeves's counsel filed a notice of a stay of the proceedings pursuant to the legislative exemption. However, a trial date was scheduled—and, indeed, imminent—at the time respondents filed motions to exclude Dr. Charash's testimony. Despite ignoring at least six requests for Charash's deposition by respondents, beginning almost immediately after Dr. Charash was disclosed by petitioner, petitioner failed to make him available for a deposition until February 21, 2019, a date significantly after the close of discovery and only weeks before the trial, which was then scheduled for March 9, 2019. Moreover, Dr. Charash was only made available by petitioner after Dr. Kaplan filed a motion to compel his attendance at a deposition. When Dr. Charash testified, he explicitly rejected the summary of his opinion as provided by petitioner's counsel—that an abdominal binder caused decedent's cardiac arrest—and explained that the restrictive abdominal binder was a factor, but as to respiratory arrest induced by multiple factors including pharmacotherapy. Dr. Charash denied that the summary provided by Ms. Reeves's counsel was complete or accurate, and denied having a meaningful discussion with Ms. Reeves's counsel about his expert opinion prior to the night preceding the deposition, even though he reviewed material provided by Ms. Reeves's counsel as early as September of 2018. Thus, it is apparent that Ms. Reeves's counsel allowed both respondents to conduct discovery for months on theories crafted by someone other than the expert witness who was expected to testify about those theories. These actions, bordering on fraudulent, were indeed made in bad faith and create more than "the usual prejudice related to receiving an

4

untimely expert opinion[,]" as Ms. Reeves suggests.

Ms. Reeves argues, however, that we suggested in *Anderson v. Kunduru*, 215 W. Va. 484, 600 S.E.2d 196 (2004), that "justice compels that a sanction be directed toward the dilatory attorney, not the dilatory attorney's client." In that case we did not specifically prescribe a circuit court's ability to employ sanctions that would adversely affect a party, but held:

> "Although Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct." Syllabus Point 1, *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996).

*Anderson*, 215 W. Va. at 484, 600 S.E.2d at 196, Syl. Pt. 2. We also held:

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

*Id.* at Syl. Pt. 3 (citation omitted). In *Anderson*, we found that the circuit court abused its discretion in striking expert witness testimony and subsequently granting summary judgment to defendants after the plaintiff's counsel failed to produce the expert witness's report for more than sixteen months after consultation. The circuit court should have, we explained, sanctioned the bad actor—the attorney—rather than "eviscerat[ing]" the plaintiff's claims.

*Anderson* differs from the case before us in a key respect. In *Anderson*, the sole expert witness was the physician with whom the plaintiff consulted prior to filing her complaint, and on whose opinion the plaintiff formulated her theory of the case. Though there was significant delay in the production of the report, there is no indication that the theory of the case changed at any point. Moreover, the *Anderson* defendants were aware of the disadvantage they operated under in not having the report and were thus equipped to make strategic decisions. Comparatively, Dr. Kaplan and Camden Clark were provided a theory (long after the filing of the complaint) that was not formulated by a medical expert and was inconsistent with the theory that Ms. Reeves ultimately planned to present at trial. Under the circumstances of this case, the prejudice to respondents is so substantial that a cure would require considerable unwinding of key discovery conducted on a false theory.

In her second assignment of error, Ms. Reeves argues that Dr. Charash should not have been precluded from testifying entirely, because he opined during his deposition that Dr. Kaplan deviated from the standard of care in not ordering the use of a continuous pulse oximeter. However, there is no indication that this opinion concerning the standard of care was shared with respondents at any point prior to Dr. Charash's deposition. Dr. Charash testified that Dr. Kaplan's failure to order the use of a continuous pulse oximeter contributed to decedent's death from respiratory arrest, however there is no indication from the record that respondents had prior notice of this opinion. Accordingly, we are not persuaded by this argument on appeal.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** June 23, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Tim Armstead
Justice John A. Hutchison

**DISSENTING:**

Justice Elizabeth D. Walker
Justice William R. Wooton

Wooton, Justice, dissenting:

I respectfully dissent. I would have put this case on the Rule 19 docket for an in-depth review of the facts and circumstances presented, in light of the governing case law. In this regard, the factual assertions contained in the parties' briefs paint starkly different pictures of what happened below; the appendix record is voluminous; and the sanction imposed by the circuit court was extreme, effectively sounding the death knell for plaintiff/petitioner's case.

I agree with the majority that the circuit court has significant discretion in imposing sanctions. However, as this Court pointed out in *Anderson v. Kunduru*, 215 W. Va. 484, 600 S.E.2d 196 (2004, "[w]hile the circuit court was clearly within its discretion to impose sanctions, those sanctions should have been imposed to the detriment of the offending *attorney* and not the attorney's *client*." *Id*. at 485, 600 S.E.2d at 197 (emphasis added). The innocent party in this unfortunate case is Ms. Reeves, who lost her daughter due to alleged medical malpractice and now, as a result of what the circuit court characterized as her attorney's bad faith maneuvering during the discovery process, will never have her day in court. I believe this result is unfair and unjust. Attorney misconduct can be addressed and punished in a variety of ways, but depriving the

attorney's client of his or her right to a jury trial[3] should not be one of them, absent a finding of actual prejudice to the opposing party.

Accordingly, I respectfully dissent.

---

[3] W. Va. Const., art. III, § 13.