# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State ex rel. Credit Control, LLC,**
**Petitioner**

**vs)    No. 20-0045** (Ohio County 14-C-213)

**The Honorable Ronald Wilson, Judge of the Circuit Court of Ohio County, West Virginia, and Melissa Thompson, Respondents**

**FILED**
**November 10, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### CORRECTED MEMORANDUM DECISION

Petitioner Credit Control, LLC (Credit Control),[1] filed this petition for a writ of prohibition to prevent the Circuit Court of Ohio County from enforcing its February 21, 2019 order permitting Respondent Melissa Thompson[2] to depose Credit Control's corporate representative a second time.[3]

Upon consideration of the standard of review, the briefs, the record presented, and oral argument, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision denying Credit Control's petition for writ of prohibition is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

### I. Facts and Procedural History

The following facts are undisputed. In 2012 and 2013, Respondent Melissa Thompson owed outstanding credit card debt on two separate accounts. In 2013, Credit Control mailed letters and placed telephone calls to Ms. Thompson in an attempt to collect the outstanding balances on those accounts. Ms. Thompson retained counsel who sent a

---

[1] Credit Control is represented by Albert C. Dunn, Jr., Esq.

[2] Ms. Thompson is represented by Robert P. Fitzsimmons, Esq., and Thomas E. McIntyre, Esq.

[3] Credit Control also requested that, if this Court permitted the deposition to occur, we require the deposition to take place in Las Vegas, Nevada, where their representative, Anthony Pirotta, resides. However, in a Rule 10(i) filing on September 8, 2020, Ms. Thompson informed the Court that, due to the unique circumstances created by the Covid-19 pandemic, Ms. Thompson has agreed to conduct a remote deposition if one is to occur. As such, we do not address this issue.

1

letter of representation to Credit Control on December 10, 2013, which informed Credit Control that all communications regarding the accounts must be directed to her counsel. This letter specifically listed only one of the two accounts, but further referenced "any other accounts or debts which [Credit Control] is attempting to collect from [Ms. Thompson]." Credit Control immediately ceased collection attempts on the specifically named account, but due to an alleged clerical error did not cease collection attempts on the second account. In July 2014, Ms. Thompson filed a civil action against Credit Control alleging violations of the West Virginia Consumer Credit Protection Act (WVCCPA)[4] because Credit Control continued to contact her after it received notice that she had retained counsel.

In its answer, Credit Control referenced in passing that any violation of the WVCCPA was the result of "unintentional conduct"[5] resulting from a clerical error, but did not provide any substantive discussion of this defense. In discovery, Ms. Thompson specifically asked in Interrogatory Number 7 if Credit Control intended to assert the defense of unintentional conduct or bona fide mistake of fact. Credit Control responded to Interrogatory Number 7 as follows: "At this time, [Credit Control] does not assert said defense but reserves the right to do so as investigation and discovery continues. [Credit Control] will supplement if necessary." It is undisputed that Credit Control failed to supplement its response to Interrogatory Number 7 until later ordered to do so by the circuit court.

On October 26, 2017, Ms. Thompson sought, under Rule 30(b)(7) of the West Virginia Rules of Civil Procedure, to depose Credit Control's corporate representative on seventeen topics related to Credit Control's receipt of letters of representation, manner of documenting that consumers as being represented by counsel, and continued efforts Credit Control made to communicate with Ms. Thompson after it received notice she was represented by counsel.[6] At the December 6, 2017, deposition, after Ms. Thompson's

---

[4] W. Va. Code § 46A-1-101 through § 46A-8-102. Ms. Thompson specifically alleged that Credit Control violated W. Va. Code § 46A-2-128(e), which prohibits a creditor from contacting a consumer after the creditor has received notice the consumer is represented by counsel.

[5] W. Va. Code § 46A-5-101(8) provides, in relevant part, "[i]f the creditor or debt collector establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error of fact notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error, no liability is imposed[.]"

[6] Specifically, those topics are: (1) a description of all calls placed on behalf of Credit Control to Ms. Thompson in 2013; (2) the method of calling; (3) the recording system and protocol for each phone call; (4) the method in which calls are initiated and terminated, and the reasons for both; (5) all other litigation or claims for improper communications to West Virginia consumers between 2012 and 2017; (6) the communications by Credit Control and its employees to Ms. Thompson; (7) how calls were made and initiated specifically to Ms. Thompson; (8) the definition and/or description of

2

counsel finished questioning the representative, Credit Control's counsel elicited testimony from the representative that Credit Control was asserting the defense of "unintentional conduct."

In 2018, Ms. Thompson and Credit Control filed cross-motions for summary judgment. In Credit Control's motion, it argued that even if it had violated the WVCCPA, the affirmative defense of unintentional conduct precluded recovery. By order dated April 23, 2018, the circuit court denied Credit Control's motion for summary judgment, but partially granted Ms. Thompson's motion insofar as Ms. Thompson had proven that Credit Control violated West Virginia Code § 46A-2-128(e)'s explicit prohibition on a debt collector's directly contacting consumers whom the debt collector knows to be represented by counsel. The circuit court partially denied Ms. Thompson's motion for summary judgment because it found material issues of fact remained regarding Credit Control's liability in light of the affirmative defense of unintentional conduct. In the order disposing of these motions, the circuit court referenced Credit Control's failure to supplement its answer to Interrogatory Number 7 to clarify that it was asserting the affirmative defense, and determined that such failure to supplement did not constitute a waiver of the defense. The circuit court also stated that it would provide Ms. Thompson further opportunity to conduct additional discovery on the issue of the affirmative defense.

As a result of this order, Ms. Thompson filed a notice on June 8, 2018, to take a second deposition of Credit Control's corporate representative. This notice only included

---

each code and/or symbol used in the call logs produced in discovery; (9) the interpretation and meaning of those call logs; (10) all collection notes and attempts relating to Ms. Thompson; (11) all demands for payments made to Ms. Thompson; (12) documents sent to and received from Ms. Thompson; (13) Credit Control's collection practices, procedures, methods, techniques, and strategies in their efforts to collect consumer debts; (14) the details and contents of all personnel files for the individual employees who worked on Ms. Thompson's collection account; (15) the person in charge of instructing the mail processor regarding certified mail; (16) the person knowledgeable about policies, procedures, and protocols or any writings or verbal rules pertaining to the receipt of certified mail; and (17) the person knowledgeable about receipt of regular U.S. Mail and certified mail in December 2013.

3

nine topics[7] to be addressed at the deposition, and three[8] of those were later withdrawn. Credit Control opposed this and moved for a protective order on the grounds that the second deposition would be duplicative in that it sought information identical to that of the first deposition. In response to Credit Control's motion for a protective order, the circuit court converted the proposed deposition topics into interrogatories and directed Credit Control to submit answers, including a supplemental answer to the original Interrogatory Number 7. In its supplemental answer, Credit Control stated, in relevant part,

> [Credit Control] does not contend that the affirmative defense of a bona fide error of fact, notwithstanding the maintenance of procedures reasonably adapted to avoid any such violation or error is applicable to the facts of this case. Defendant DOES contend that any violation of the West Virginia Consumer Credit and Protection Act alleges [sic] in this case was unintentional.

(Emphasis in original). Credit Control then failed to answer any of the interrogatories seeking specific information related to the defense of unintentional conduct.

Upon reviewing the responses, the circuit court determined that Credit Control "had the opportunity to avoid the requested deposition by fully answering the information sought" by Ms. Thompson, but failed to do so. It then ordered the second deposition of Credit Control's corporate representative to go forward. For reasons unclear to this Court, the second deposition did not occur as scheduled and Ms. Thompson filed a third notice of deposition on October 3, 2019, for this same purpose. In response to the third notice, Credit Control filed yet another motion for protective order, which the circuit court denied. That denial is the subject of this petition for writ of prohibition.

## II.  Standard of Review

---

[7] Specifically, these topics were: (1) the details of each account of Ms. Thompson placed for collection and/or purchased by Credit Control; (2) how and why phone calls were initiated and made to Ms. Thompson; (3) the persons who initiated phone calls to Ms. Thompson after Credit Control received the letter of representation; (4) the policies, procedures, and protocols established for employees and/or agents of Credit Control which were applicable to all collection activities and/or used to collect on Ms. Thompson's accounts; (5) all documents evidencing that Credit Control had knowledge as to the name and address of Ms. Thompson's attorney; (6) the process, procedures, and protocols as to what is done when a letter of representation is received; (7) all rules and regulations applicable to all collection activities; (8) filing and/or storage of all written correspondence or communications from consumers; and (9) the existence and details of any systems, policies, and/or procedures designed to ensure compliance with the WVCCPA.

[8] Numbers 5, 7, and 8, as detailed in footnote 7, were withdrawn.

4

This Court has long applied the standard enumerated in Syllabus Point 4 of *State ex rel. Hoover v. Berger*[9] to petitions for writs of prohibition:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

This Court has also made clear that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders."[10]

## III. Discussion

In its petition, Credit Control contends that the Circuit Court of Ohio County exceeded its legitimate authority in denying Credit Control's motion for protective order and in permitting the second deposition of Credit Control's representative to go forward. Specifically, Credit Control argues the circuit court erred in failing to find that the second deposition was unnecessarily duplicative and, thus, prohibited under Rule 26(b) of the West Virginia Rules of Civil Procedure. In response, Ms. Thompson argues that the second deposition functions as a discovery sanction under Rule 37 of the West Virginia Rules of Civil Procedure, in that the circuit court sanctioned Credit Control for (1) its failure to supplement its answer to Interrogatory Number 7 and (2) its failure to comply with the circuit court's order that it answer the proposed topics for the second deposition as if they were interrogatories.

Beginning with Ms. Thompson's argument, we agree that the circuit court could have ordered the second deposition of Mr. Pirotta as a discovery sanction under Rule 26(e)

---

[9] 199 W. Va. 12, 483 S.E.2d 12 (1996).

[10] Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

and Rule 37(b)(2). Addressing a court's ability to issue discovery sanctions, we have held that

> [a]lthough Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.[11]

In that same case, we noted that a court is to be guided by equitable principles in formulating a sanction.[12] And, the court "must identify the alleged wrongful conduct and determine if it warrants a sanction," and "explain its reasons clearly on the record if it decides a sanction is appropriate."[13] Finally, the court must determine what would be an appropriate sanction and weigh the seriousness of the conduct, the impact the conduct had on the case, any mitigating circumstances, and whether the conduct exhibited a pattern of wrongdoing throughout the case.[14] For the reasons set forth below, we find that, even though the circuit court did not explicitly state it was sanctioning Credit Control, all of the preceding factors have been satisfied.

Rule 26(e)(2) provides that a party is under a duty to supplement its response to interrogatories when "(A) [t]he party knows the response was incorrect when made, or (B) [t]he party knows the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment." Rule 26(e)(3) further provides that "[i]f supplementation is not made as required by this Rule, the court, upon motion or *upon its own initiative*, may impose upon the person who failed to make the supplementation an appropriate sanction as provided for under Rule 37."[15] Finally, Rule 37(b)(2) provides, in pertinent part, that where "a party fails to supplement as provided for under Rule 26(e) . . . the court in which the action is pending may make such orders in regard to the failure as are just[.]" We have previously

---

[11] Syl. Pt. 1, *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996) (footnote added).

[12] *Id*. at Syl. Pt. 2.

[13] *Id*.

[14] *Id*.

[15] W. Va. R. Civ. P. 26(e)(3) (emphasis added).

6

expressed our approval that a court may order, as an appropriate sanction, that a deponent be re-deposed.[16]

Credit Control argues that it stated in its answer to the complaint that it was asserting the defense of unintentional conduct. However, in Ms. Thompson's first set of interrogatories to Credit Control, she specifically asked if Credit Control was asserting a defense under West Virginia Code § 46A-5-101(8).[17] In its original response to Interrogatory Number 7, Credit Control represented that it was not asserting *any* defense under West Virginia Code § 46A-5-101(8). While Credit Control may have meant that it was only declining to assert the defense of bona fide error of fact, its response served to indicate that it was asserting neither that defense nor the defense of unintentional conduct. Credit Control knew, or should have known, this response was incorrect when it was made and, therefore, should have supplemented its response. And, Credit Control represented in its response to Interrogatory Number 7 that it *would* supplement its response if necessary, but still failed to do so. Even when the circuit court ordered Credit Control to supplement its response to Interrogatory Number 7, Credit Control still failed to appropriately address the defense of unintentional conduct, in that it merely acknowledged that it was asserting the defense without providing the specific information sought.

Ultimately, even though the circuit court did not express that it was imposing sanctions under Rule 37 for Credit Control's repeated failures to supplement, we can infer as much from the order denying Credit Control's protective order. In the order, the circuit court explicitly referenced Credit Control's repeated failures to supplement its response to Interrogatory Number 7 before permitting the second deposition to proceed. The circuit court also explained in permitting the deposition to go forward that Credit Control "had the opportunity to avoid the requested deposition by fully answering the information sought by [Ms. Thompson]." It is equally clear from the record and the order that in issuing this sanction, the circuit court considered Credit Control's exhibited pattern of evading this question and that such evasion was detrimental to the administration of justice in that it deprived Ms. Thompson of the ability to properly rebut the defense of unintentional conduct. So, we conclude that the circuit court was within its discretion in formulating this sanction and committed no clear error of law in permitting the second deposition of Credit Control's corporate representative to proceed.

---

[16] *See Jenkins v. CSX Transp. Inc.*, 220 W. Va. 721, 729, 649 S.E.2d 294, 302 (2007) (noting that we afford broad discretion under the West Virginia Rules of Civil Procedure for courts to sanction parties, and re-deposing an expert witness would have been appropriate in that case).

[17] W. Va. Code § 46A-5-101(8) provides for two defenses for violations of the WVCCPA: (1) the violation was the result of unintentional conduct; or (2) the violation was the result of bona fide error of fact.

We are likewise unpersuaded by Credit Control's argument that the proposed topics for the second deposition are duplicative of the topics covered in the first deposition in violation of Rule 26(b) of the West Virginia Rules of Civil Procedure. The seventeen topics listed in the first notice of deposition are varied and generalized, ranging from the number of phone calls directed to Ms. Thompson to the method for initiating calls to consumers to the policies in place to collect consumer debts. On the other hand, the second notice of deposition includes only six topics of discussion.[18]

Upon review, four of the six topics in the second notice of deposition overlap with the first deposition's topics, specifically those covering the details of Ms. Thompson's accounts, the method and reason for initiating mailed and telephonic calls to Ms. Thompson, the persons initiating those communications, and the policies in place to guide employees in their attempts to collect consumer debt. In addressing these overlapping topics, the circuit court concluded that the topics were not overly broad, that the information was readily available to Credit Control, and that the topics were likely to lead to the discovery of admissible evidence at trial.[19] We cannot find that the circuit court erred in reaching these conclusions, as these overlapping topics involve facts necessary to address Credit Control's handling of Ms. Thompson's accounts. The details of Ms. Thompson's account are basic facts in this case, and we cannot imagine how Ms. Thompson would be able to conduct the second deposition of Credit Control's representative at all without at least tangentially referencing them. Beyond this, the remaining topics consist of essential facts surrounding Credit Control's assertion of the affirmative defense of unintentional conduct, as they address the policies and procedures for contacting clients, the persons engaging in such contact, and how debts are collected. As Credit Control is asserting the defense of unintentional conduct, Ms. Thompson must be able to depose their corporate representative *about the conduct* in order to ascertain whether it was, in fact, unintentional.

Finally, the two remaining topics address (1) Credit Control's practice upon receiving a letter of representation and (2) the policies and the procedures in place to ensure compliance with credit and consumer protection laws. It is clear those topics are specifically tailored to address the elements of the affirmative defense of unintentional

[18] As noted above, there were originally nine topics included, but three were withdrawn upon Credit Control's objection that they were duplicative and upon Ms. Thompson's acknowledgement that Credit Control had provided the requisite information requested by those topics.

[19] *See* Syl. Pt. 4, *State Farm Mut. Auto. Ins. Co.*, 188 W. Va. at 624, 425 S.E.2d at 579 (1992) ("The question of the relevancy of the information sought through discovery essentially involves a determination of how substantively the information requested bears on the issues to be tried. However, under Rule 26(b)(1) of the West Virginia Rules of Civil Procedure, discovery is not limited only to admissible evidence, *but applies to information reasonably calculated to lead to the discovery of admissible evidence*.") (emphasis added).

conduct: (1) that the debt collector maintains procedures reasonably adapted to avoid violating the WVCCPA, and (2) that the alleged violation was unintentional.[20]  As such, we conclude that the circuit court did not err in permitting Ms. Thompson to raise the foregoing topics in the second deposition, as they are not unnecessarily duplicative of the first deposition so as to violate Rule 26(b) of the West Virginia Rules of Civil Procedure.

Based on the foregoing, we conclude that the circuit court did not abuse its discretion or commit clear error of law in formulating the discovery sanction or in determining that the second deposition would not be duplicative of the first.  As such, we cannot conclude that the circuit court exceeded its legitimate authority so as to warrant the issuance of a writ of prohibition.

Writ denied.

**ISSUED**: November 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[20] We set forth these elements recently in *LTD Fin. Servs., L.P. v. Collins*, No. 18-008, 2019 WL 1223251 (Mar. 15, 2019) (memorandum decision).