**FILED**
**November 16, 2021**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia ex rel.**
**Mingo County Board of Education,**
**Petitioner**

**vs.)  No. 21-0311** (Mingo County 18-C-142)

**The Honorable Miki Thompson,**
**Judge of the Circuit Court of Mingo County,**
**and "Big Jim" Hatfield,**
**Respondents**

## MEMORANDUM DECISION

Petitioner, Mingo County Board of Education (the "Board"), by counsel Duane J. Ruggier, II and Evan S. Olds, petitions this Court for a writ of mandamus and a writ of prohibition. Specifically, the Board asks this Court to compel the Circuit Court of Mingo County to enter an order addressing the immunity issue raised in its motion for summary judgment. Moreover, the Board asks this Court to prohibit the Circuit Court of Mingo County from enforcing its rulings (1) reopening discovery for Respondent, "Big Jim" Hatfield ("Mr. Hatfield"), to conduct depositions at the Board's expense and (2) requiring a second mediation at the Board's expense. Mr. Hatfield, by counsel H. Truman Chafin and Letitia Neese Chafin, asserts that the circuit court properly deferred ruling on the immunity issue raised in the motion for summary judgment, properly reopened discovery to allow him to undertake certain depositions at the Board's expense, and properly required the parties to conduct a second mediation at the Board's expense.

This Court has considered the appendix record, the parties' briefs and oral arguments, and the applicable law. We conclude that the Board has not met the standard for the issuance of a writ of mandamus in this case. We further conclude that the Board has, in part, met the standard for the issuance of a writ of prohibition. Accordingly, we deny the requested writ of mandamus and grant the writ of prohibition, in part, and deny, in part. As this case presents no new or substantial question of law, its proper disposition is by memorandum decision as contemplated by Rule 21 of the Rules of Appellate Procedure.

## I.      Factual and Procedural Background

In November of 2018, Mr. Hatfield filed a negligence action against the Board in the Circuit Court of Mingo County after he fell in a parking lot area outside the football stadium at Mingo Central High School. Shortly thereafter, the Board filed its Answer. Beginning in December of 2018 and continuing throughout 2019 and 2020, the parties engaged in both written discovery and depositions. While the parties undisputedly engaged in the discovery process, both the Board and Mr. Hatfield each lay blame with the other party for failing to fully participate in

1

and comply with the rules of discovery. As an initial point, each party served written discovery which included interrogatories and requests for production of documents. Both sets of discovery included some form of an interrogatory requesting names and a summary of expected testimony of fact and expert witnesses. Mr. Hatfield responded with several names of potential fact witnesses and stated he would supplement with expert witness information.[1] The Board responded to similar interrogatories that it would disclose fact and expert witnesses in accordance with any scheduling order entered by the circuit court. Following the exchange of the written discovery, in August of 2019, the Board noticed the deposition of Mr. Hatfield.[2]

---

[1] Interrogatory No. 2 of the Board's First Set of Interrogatories and Request for Production of Documents and Mr. Hatfield's response thereto are as follows:

2. State the name, address and telephone number of every person known to Plaintiff to have any knowledge of the events surrounding the incident on November 26, 2016, and the related events prior and subsequent thereto as alleged in the *Complaint*.

ANSWER: The following individuals have knowledge concerning the events surrounding this incident:

- Jessica Cooper;
- Tara Smith;
- Linda Curry;
- Mark Curry;
- Diana Owens;
- David Owens;
- EMT's [sic] from Stat Ambulance Service[.]

Plaintiff reserves his right to supplement his answer hereto as more information becomes known or available.

Moreover, Interrogatory Nos. 16 and 17 requested Mr. Hatfield to identify each witness expected to testify at trial and the substance of the expected testimony of each witness. Mr. Hatfield responded that it was premature and would supplement as discovery progressed and pursuant to the court's scheduling order. Likewise, Interrogatory No. 18 requested information regarding any expert witness expected to testify at the trial in this proceeding, including name, address, summary of each opinion, and expected testimony at trial. Mr. Hatfield responded again that he objected because the interrogatory was premature, but that he reserved his right to supplement his response as discovery progressed and according to the circuit court's scheduling order in the matter.

[2] The deposition occurred on September 5, 2019.

2

On October 21, 2019, by letter, Mr. Hatfield sent the Board a deposition notice pursuant to Rule 30(b)(7) of the West Virginia Rules of Civil Procedure[3] which included a list of topics to be covered during the deposition. The deposition notice did not include a specific date and time, but rather provided that a date and time could be discussed once the Board has "identified the proper representatives to offer the requested testimony[.]" It is undisputed that this deposition never occurred.[4] In February and May of 2020, the Board conducted several depositions.[5]

Almost two years after the matter had been initiated, the circuit court entered a scheduling order setting a trial date for February of 2021. Additionally, the scheduling order provided that Mr. Hatfield was to submit his fact and expert witness disclosures 120 days prior to trial, and the Board's disclosures were to be submitted ten days thereafter. Pursuant to the scheduling order, Mr. Hatfield filed his fact and expert witness disclosures on October 5, 2020. The Board subsequently filed its fact and expert witness disclosures on October 16, 2020. Following these disclosures, on October 19, 2020, Mr. Hatfield sent the Board a good faith letter regarding the Board's initial discovery responses that were served in February of 2019. Of relevance to this proceeding, the letter set forth that Mr. Hatfield "would like more detailed answers" to certain interrogatories and request for production of documents, including those requesting fact and expert witness information. Mr. Hatfield stated in his letter that if these matters could not be resolved, he would seek a motion to compel. On October 29, 2020, the Board also sent Mr. Hatfield a good

---

[3] Rule 30(b)(7) of the West Virginia Rules of Civil Procedure provides as follows:

A party may in a notice and in a subpoena name as the deponent a public or private corporation or a partnership or association or governmental agency and describe with reasonable particularity the matters on which examination is requested. In that event, the organization so named shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. A subpoena shall advise a non-party organization of its duty to make such a designation. The persons so designated shall testify as to matters known or reasonably available to the organization. This subdivision does not preclude taking a deposition by any other procedure authorized in these rules.

[4] The parties' explanations as to why this deposition never took place vary. The Board asserts that Mr. Hatfield abandoned this request by failing to follow-up and pursue it further. Mr. Hatfield counters that the Board informed Mr. Hatfield's counsel that no such Rule 30(b)(7) representative existed. There is simply no information provided in the record before the Court to definitively determine why this deposition did not occur.

[5] The Board noticed the deposition of Jack Steel, M.D. for February 17, 2020; Jessica Cooper on May 15, 2020; Tara Smith on May 15, 2020; Mark Curry on May 15, 2020; Linda Curry on May 15, 2020; David Owens on May 15, 2020; Diana Owens on May 15, 2020; and Eric Curry on May 15, 2020. In addition to these depositions, on September 16, 2020, the Board noticed the deposition of James Jensen, M.D. for October 8, 2020. From the record before us, it does not appear that the depositions of Tara Smith and David Owens took place.

faith letter requesting that Mr. Hatfield supplement his responses to certain interrogatories and request for production of documents. There is no indication in the record before us that the Board supplemented its discovery responses, except for disclosing an expert report for David Soulsby, M.D. on January 8, 2020.[6] According to the circuit court's scheduling order, discovery closed on December 3, 2020.[7] Following the close of discovery, on December 11, 2020, the Board filed two motions for summary judgment: (1) one as to liability and (2) one as to damages. On December 20, 2020, the Board filed a memorandum in support for each of the motions for summary judgment. In its motion for summary judgment and memorandum in support as to liability, the Board contended that it was entitled to immunity pursuant to the West Virginia Tort Claims Act, and in particular, West Virginia Code §§ 29-12A-4 and 29-12A-5(a).[8] Attached to the memorandum in

---

[6] Mr. Hatfield supplemented his responses on the last day of discovery, December 3, 2020.

[7] There is no indication in the record before us that Mr. Hatfield sought to undertake any deposition in this matter other than the Rule 30(b)(7) deposition.

[8] West Virginia Code § 29-12A-4(b)(1) states:

> Except as provided in subsection (c) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function: Provided, That this article shall not restrict the availability of mandamus, injunction, prohibition, and other extraordinary remedies.

Furthermore, West Virginia Code § 29-12A-4(c) provides:

> Subject to sections five [§ 29-12A-5] and six [§ 29-12A-6] of this article, a political subdivision is liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
>
> (1) Except as otherwise provided in this article, political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent operation of any vehicle by their employees when the employees are engaged within the scope of their employment and authority.
>
> (2) Political subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment.
>
> (3) Political subdivisions are liable for injury, death, or loss to persons or property caused by their negligent failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, or free from nuisance, except that it is a

4

support was an affidavit from a former Mingo Central High School principal who purportedly had knowledge of the parking lot where Mr. Hatfield was allegedly injured.[9]  Mr. Hatfield filed a response in opposition to both motions for summary judgment.  Furthermore, despite the close of discovery, the Board deposed Mr. Hatfield's expert witness, Ronald Eck, P.E., Ph.D., on December 21, 2020, after receiving the expert's report on December 18, 2020.  On January 5, 2020, Mr. Hatfield also filed a motion for partial summary judgment as to liability, and, also, relying on the West Virginia Tort Claims Act.  The Board filed a response in opposition.  Additionally, prior to the pre-trial conference set for January of 2021, both parties filed several pre-trial motions, including motions to exclude each party's respective expert witnesses, the Board's fact witnesses, and the Board's witnesses regarding any testimony as to the parking area of the football facility at Mingo Central High School.  Days prior to the pre-trial conference, on January 11, 2021, the parties engaged in mediation which was ultimately unsuccessful.

On January 14, 2021, the circuit court held a pre-trial hearing.  The circuit court heard argument on the parties' respective motions for summary judgment.  Furthermore, during the hearing, the Board relied on the affidavit of Deborah Harris that was attached to its motion for

---

full defense to such liability, when a bridge within a municipality is involved, that the municipality does not have the responsibility for maintaining or inspecting the bridge.

(4) Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used by such political subdivisions, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility.

(5) In addition to the circumstances described in subdivisions (1) to (4) of subsection (c) of this section, a political subdivision is liable for injury, death, or loss to persons or property when liability is expressly imposed upon the political subdivision by a provision of this code. Liability shall not be construed to exist under another section of this code merely because a responsibility is imposed upon a political subdivision or because of a general authorization that a political subdivision may sue and be sued.

However, the Board contends that the exceptions to liability contained in West Virginia Code §§ 29-12A-5(a)(1) and (7) apply.  Pursuant to these sections:

(a) A political subdivision is immune from liability if a loss or claim results from:

(1) Legislative or quasi-legislative functions;
. . .
(7) Natural conditions of unimproved property of the political subdivision[.]

[9] This affidavit was not included as a part of the record before this Court.

summary judgment as to liability. Because of this reliance, the pre-trial motions to exclude were discussed by counsel during oral argument in relation to the affidavit attached to the motion for summary judgment,[10] and Mr. Hatfield requested that the circuit court not consider the subject affidavit. The circuit court did not rule on any of the motions for summary judgment. Instead, the circuit court instructed each party to submit proposed orders. The court further indicated that due to the Covid-19 global pandemic and this Court's orders regarding court proceedings during the pandemic, that the circuit court was behind on conducting trials. As such, the trial in the present matter would need to be reset for a later date. The court directed that it would hold a status conference in February of 2021 regarding any outstanding pre-trial motions. On January 28, 2021, the Board submitted its proposed orders granting its motions for summary judgment as to liability and damages. On February 23, 2021, Mr. Hatfield submitted to the circuit court his proposed order granting his motion for partial summary judgment as to liability and order denying the Board's motion for summary judgment as to damages. In February of 2021, the court held a status hearing and noted in its order that there were several motions in limine outstanding, however, there was no mention of the motions for summary judgment.

On March 23, 2021, the circuit court held a hearing on the outstanding pre-trial motions regarding the exclusion of documents and witnesses, among other pre-trial issues not relevant to this current proceeding.[11] At the outset, the circuit court allowed Mr. Hatfield to argue his pre-trial exclusionary motions. After hearing argument from both sides regarding Mr. Hatfield's motion to exclude the Board's expert witness, the circuit court ruled as follows:

---

[10] The Board asserted in its response to the motion in limine to exclude any testimony regarding the parking area from a Board agent or employee that it

> remained in touch with [Mr. Hatfield's] counsel's office through December 2019 and advised [Mr. Hatfield's] counsel on December 23, 2019, that [the Board] was struggling to identify an individual who could serve as a Rule 30(b)(7) representative, considering the football stadium was built so long ago (it opened in 2011 and the property it sits on was gifted to the Board in 2006). [Mr. Hatfield] never followed up and never sought any dates for the 30(b)(7) deposition. [The Board] was left to presume that [Mr. Hatfield] no longer wanted to pursue the deposition.

(Footnote omitted). Moreover, in the same response, the Board noted that

> [f]ollowing the January 14, 2021, pre-trial conference in this matter, in which [Mr. Hatfield's] counsel indicated [Mr. Hatfield] wished to depose person(s) with knowledge of the items in the 30(b)(7) Notice, the undersigned counsel contacted [Mr. Hatfield's] counsel on January 28, 2021, January 29, 2021, and February 1, 2021, to arrange for the deposition(s). [As of March of 2021], [Mr. Hatfield's] counsel has not sought to set any deposition.

[11] There was no mention by the circuit court or either party as to the status of the respective motions for summary judgment other than a simple statement by the Board's counsel that the motions for summary judgment were addressed at the prior hearing.

6

Well, I think there's even an administrative order from the Supreme Court to extend deadlines. You know, we're in crazy times right now. I'm going to let them use the expert, but if you choose to depose them I'm going to make the [Board] pay for all costs and expenses.

The court next heard oral argument on Mr. Hatfield's motion to strike the Board's fact witnesses. The court ruled similarly by stating:

They [the Supreme Court Orders] have been very generous with extending deadlines and even Statute[s] of Limitations have been extended, which I didn't think they would do that but they have. But since this is out of the time line – and I've always felt like this is a case that could be mediated and resolved, but, obviously, that's not going to happen. I will allow [Mr. Hatfield], though, if [he] want[s] to do the 30(b)(6) – 30(b)(7) motions – if they want to do any depositions in that regard that they can do so at the [Board's] expense[.]

The circuit court further found that if the fact witnesses and/or board members "had been disclosed timely, you know, then that information could have been used in mediation or in some way, you know, [Mr. Hatfield] could have deposed them." Accordingly, the circuit court ordered a second mediation to be conducted prior to the new trial date and for it to be at the cost of the Board.

After considering Mr. Hatfield's pre-trial motions, the circuit court declined to hear the Board's pre-trial motions finding that

after these depositions, if [Mr. Hatfield] decides to do those, there's probably going to be more motions, I would suspect, so let's address all of these at a later date. We have a little bit of time until July [the new trial date], and I'm also going to order after these depositions that -you know, there's probably going to be new information and I'm going to order mediation again at [the Board's expense].

At the conclusion of the hearing, the Board argued that it had, in fact, timely disclosed all witnesses and did not understand why it was being sanctioned by the circuit court to pay for these additional depositions and mediation. The circuit court responded by stating:

I'm just directing you to pay for the mediation and for the depositions. They weren't disclosed timely[,] and I believe that there's a good possibility that that failure to disclose timely could have affected the results of mediation. It needs to be mediated again, so that's what we're going to do[.]

Following these rulings, the Board filed the instant petitions seeking extraordinary relief from this Court.

## II.    Discussion

As stated herein, the Board filed a petition for a writ of mandamus and a writ of prohibition to (1) compel the circuit court to enter an order addressing the Board's motions for summary judgment; and (2) prohibit the circuit court from enforcing its rulings to reopen discovery and allow Mr. Hatfield to depose fact and expert witnesses, to direct the parties to undergo a second mediation, and to require the Board to pay the costs of any depositions and the second mediation. We address each in turn.

### A. Writ of Mandamus

This Court has held that "[m]andamus is a proper remedy to require the performance of a nondiscretionary duty by various governmental agencies or bodies." Syl. Pt. 1, *State ex rel. Allstate Ins. Co. v. Union Pub. Serv. Dist.*, 151 W. Va. 207, 151 S.E.2d 102 (1966). Further, in Syllabus Point 1 of *State ex rel. Kucera v. City of Wheeling*, 153 W. Va. 538, 170 S.E.2d 367 (1969), we held that "[p]etitioners in mandamus must have a clear legal right to the relief sought therein and such right cannot be established in the proceeding itself." In determining whether to issue a writ of mandamus, we have held that

> [a] writ of mandamus will not issue unless three elements coexist–(1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner seeks to compel; and (3) the absence of another adequate remedy.

*Id.* at Syl. Pt. 2. With these standards in mind, we proceed to consider the parties' respective arguments.

The Board contends that the circuit court indicated during a January 14, 2021 hearing, that it would deny the Board's motion for summary judgment on liability based upon its immunity, yet has failed to issue an order on the motion for summary judgment. Specifically, the Board asserted in its petition that mandamus should issue because the circuit court "has a nondiscretionary, ministerial duty to enter a detailed order(s) addressing immunity when it is raised; and the [c]ircuit [c]ourt has failed to do so."[12]

We certainly acknowledge that "[t]he very heart of the immunity defense is that it spares the defendant from having to go forward with an inquiry into the merits of the case." *Hutchison v. City of Huntington*, 198 W. Va. 139, 148, 479 S.E.2d 649, 658 (1996). As we previously have noted, "[t]he doctrine of qualified and statutory immunity was created to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). Once the issue of immunity is raised, a court should, unless there is a genuine material dispute of facts regarding the underlying immunity determination, render a ruling on

---

[12] In its petition before this Court, the Board appears to mention both of its motions for summary judgment, liability and damages, regarding the writ of mandamus. However, only the motion for summary judgment as to liability relies on an immunity argument.

immunity as soon as practicable. *See* Syl. Pt. 1, *Hutchison*, 198 W.Va. 139, 479 S.E.2d 649 ("The ultimate determination of whether qualified or statutory immunity bars a civil action is one of law for the court to determine. Therefore, unless there is a bona fide dispute as to the foundational or historical facts that underlie the immunity determination, the ultimate questions of statutory or qualified immunity are ripe for summary disposition.").

In the matter sub judice, upon reviewing the transcript of the January 14, 2021 hearing, we find that the circuit court at no point denied the Board's motion for summary judgment. In fact, at the conclusion of the hearing, it was clear that all dispositive motions filed by each party were being taken under advisement when the circuit court asked both parties to submit proposed orders (which they both did). Because there has been no ruling by the circuit court on the motion for summary judgment as to the issue of immunity, there is no clear legal right to the relief sought.

Moreover, we find that the Board is not entitled to any mandamus relief to the extent that it is arguing that we should compel the circuit court to decide the issue of immunity immediately. Again, while issues of immunity should be decided as early in a proceeding as possible, here, the matter is complicated by outstanding discovery issues. Although the circuit court did not consider the numerous pre-trial motions to exclude certain testimony and witnesses at the January 14, 2021 hearing on the dispositive motions, these pre-trial motions were discussed in relation to the motion for summary judgment as to liability. Specifically, Mr. Hatfield argued to the circuit court that the motion for summary judgment as to liability incorporated and relied on an affidavit of Deborah Harris, a former principal at Mingo Central High School. During the hearing, Mr. Hatfield notified the circuit court that, prior to the hearing, he had filed a motion to strike and exclude the testimony of Ms. Harris on the basis that she was untimely disclosed as a witness. Moreover, Mr. Hatfield argued that the use of the affidavit should not be permitted and that the circuit court should not rely on her testimony as to the motion for summary judgment. We agree with Mr. Hatfield that, based upon the outstanding discovery issues, ruling on the parties' respective motions to strike and exclude certain witnesses, including Ms. Harris, was necessary prior to the circuit court considering a dispositive motion that relied upon the subject affidavit. Accordingly, we deny the writ of mandamus.

### B. Writ of Prohibition

Next, we turn to the Board's request that we issue a writ of prohibition. When faced with a petition for prohibitory relief, this Court previously has held that "[a] writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va. Code [§] 53-1-1." Syl. Pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977). In the case sub judice, the Board asserts that the circuit court exceeded its legitimate authority by reopening discovery to allow the taking of limited depositions; ordering a second mediation; and ordering that the Board pay the costs of the depositions and second mediation. In such circumstances, this Court consistently has held:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors:

9

(1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Moreover, we previously have held that "[a] writ of prohibition is available to correct a clear legal error resulting from a trial court's substantial abuse of its discretion in regard to discovery orders." Syl. Pt. 1, *State Farm Mut. Auto. Ins. Co. v. Stephens*, 188 W. Va. 622, 425 S.E.2d 577 (1992).

Here, the Board contends that a writ of prohibition is necessary for essentially three reasons: (1) to prohibit the circuit court from reopening discovery to allow the taking of certain, limited depositions; (2) to prohibit the circuit court from requiring the parties to undergo a second mediation; and (3) to prohibit the circuit court from requiring the Board to pay the costs associated with each deposition and the second mediation. We will examine each of these issues in turn.

First, there is the issue of the circuit court reopening discovery to allow Mr. Hatfield to take limited depositions of certain fact witnesses, an expert witness, and a Rule 30(b)(7) witness. Regarding the fact witness disclosures, it is undisputed that, at the outset of discovery in early 2019, Mr. Hatfield requested the name and address of any person who the Board intended to call as a witness and asked the Board to provide a detailed summary of each witness's expected testimony. It was not until October of 2020, less than sixty days prior to the close of all discovery, that the Board submitted its fact witness disclosure pursuant to the scheduling order, not in response to Mr. Hatfield's discovery request for such information. This disclosure did not provide the address and summary of the expected testimony as previously requested by Mr. Hatfield. Upon receipt, Mr. Hatfield sent a good faith letter to the Board asking it to supplement its previous responses, including requesting the Board to provide the detailed summary associated with the fact witness disclosure.[13] There is nothing in the record to demonstrate that the Board responded to this letter or supplemented its earlier discovery responses with the expected testimony of its fact witnesses.

There are similar issues as to the disclosure of the Board's expert witness. During the initial written discovery, Mr. Hatfield requested names and a summary of the expected testimony of any expert witness. The Board did not disclose any of this information until October of 2020, and, even then, there was no description of the expected testimony. Mr. Hatfield also requested

---

[13] The good faith letter was sent over a year after the initial discovery responses were submitted.

that this information be supplemented in his good faith letter. It was not until January of 2021, after the date of the close of discovery that the Board provided Mr. Hatfield with the report of its expert witness.[14] Additionally, there is the issue of a Rule 30(b)(7) witness. It is undisputed that Mr. Hatfield requested this deposition and gave a comprehensive list of topics for the representative early in the litigation. Aside from this request, there is no further correspondence in the record as to what occurred regarding the lack of a Rule 30(b)(7) deposition. The Board alleges that it informed Mr. Hatfield that it had trouble locating an individual and that it eventually assumed Mr. Hatfield had abandoned his request to take the deposition. On the other hand, Mr. Hatfield contends that he was told by the Board that there was no witness who had knowledge of those topics. Ultimately, the Board failed to identify any individual who could be deposed as to any of the topics listed; however, it utilized a former Board agent/employee to submit an affidavit regarding at least a portion of those topics and in support of its motion for summary judgment as to liability. As such, a deposition was timely requested, a name was never given, a deposition was never set, and an individual was ultimately used to provide an affidavit in support of the issue of immunity on a motion for summary judgment.

Our review of the circuit court's discovery rulings is deferential:

The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995).[15] As we have stated, "the overarching purpose of discovery is to clarify and narrow the issues in litigations, so as to

---

[14] The Board contends that despite this late disclosure of the expert report, it has on several occasions extended the offer to allow Mr. Hatfield to depose its expert witness after the close of discovery.

[15] As stated herein, trial courts are afforded a great deal of discretion regarding discovery matters. *See* Syl. Pt. 1, *McDougal v. McCammon*, 193 W. Va. 229, 455 S.E.2d 788 (1995). Additionally, other courts have found that this discretion includes trial court rulings on whether the discovery period should be shortened, extended, or reopened. *See Woelper v. Piedmont Cotton Mills, Inc.*, 467 S.E.2d 517, 518-19 (Ga. 1996) ("A trial court has wide discretion to shorten, extend, or reopen the time for discovery, and its decision will not be reversed unless a clear abuse of that discretion is shown."); *Ruane v. Amore*, 677 N.E.2d 1369, 1374 (Ill. App. 1 Dist. 1997) ("The decision as to whether to reopen discovery rests in the sound discretion of the circuit court[,] and this court will not disturb such rulings on appeal absent a showing of abuse of discretion."). *See also New Mexico ex rel. Balderas v. Real Est. L. Ctr., P.C.*, 429 F. Supp. 3d 996, 1005 (D.N.M. 2019) ("Discovery plays an important role in our adversarial system: full development of the facts surrounding a matter furthers the purpose discovery is intended to serve -- advancing the quest for truth. Discovery is also, ideally, a self-executing system. Sometimes, though, the discovery

efficiently resolve disputes. This purpose makes litigation less of a game of blindman's bluff and more of a contest that seeks a fair and adequate resolution of a dispute." *State ex rel. Pritt v. Vickers*, 214 W. Va. 221, 226, 588 S.E.2d 210, 215 (2003) (internal quotations and citations omitted). Furthermore, Rule 16(b) of the West Virginia Rules of Civil Procedure mandates that the court shall enter a scheduling order, specifically including a deadline for the completion of discovery. W. Va. R. Civ. P. 16. Rule 16(b) further provides that "[a] schedule shall not be modified except by leave of the judge." *Id.* Moreover, the trial date in this case already had to be moved from February of 2021 to July of 2021 due to circumstances unrelated to these discovery issues. Therefore, given the specific circumstances of this matter, we cannot find that the circuit court substantially abused its discretion or committed clear legal error by allowing limited depositions of fact, expert, and corporate representatives after the discovery deadline had passed where the parties, themselves, already had provided discovery beyond this date.

Second, there is the issue of a second mediation. The circuit court found that the Board's supposed failure to make timely disclosures "could have affected the results of [the] mediation." However, the Board argues that Mr. Hatfield never contended that his receipt of Petitioner's witness disclosures on October 16, 2020, prejudiced him at the first mediation which was held three months later on January 11, 2021. Here, again, given that the trial date had to be moved due to circumstances out of the control of either party, and the fact that additional depositions may occur resulting in potentially significant information, we do not find that the circuit court substantially abused its discretion or committed clear legal error in requiring a second mediation to occur prior to trial.

Finally, there is the issue of the payment of costs of these depositions and second mediation. In Syllabus Point 1 of *Bartles v. Hinkle*, 196 W. Va. 381, 472 S.E.2d 827 (1996), we held that

> [a]lthough Rules 11, 16, and 37 of the West Virginia Rules of Civil Procedure do not formally require any particular procedure, before issuing a sanction, a court must ensure it has an adequate foundation either pursuant to the rules or by virtue of its inherent powers to exercise its authority. The Due Process Clause of Section 10 of Article III of the West Virginia Constitution requires that there exist a relationship between the sanctioned party's misconduct and the matters in controversy such that the transgression threatens to interfere with the rightful decision of the case. Thus, a court must ensure any sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

Additionally, in Syllabus Point 2 of *Bartles*, we held that,

> [i]n formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct

---

system breaks down. Determining whether to reopen discovery requires striking a delicate balance between the interests of efficiency and accountability on the one hand, and a recognition of the importance of discovery for resolving cases on the merits on the other." (internal quotations and citations omitted)).

and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

Moreover, while we review the imposition of sanctions under an abuse of discretion standard,

> this does not mean that we rubber stamp the sanction decisions of trial courts. Instead, we determine whether the trial court acted within its discretion by examining the factual situation in each case to determine if the sanction imposed is fashioned to address the identified harm caused by the party's misconduct.

*State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders*, 226 W. Va. 103, 112, 697 S.E.2d 139, 148 (2010) (internal quotations and citations omitted).

It is unclear from the record whether the circuit court imposed these monetary sanctions pursuant to Rules 26[16] and 37[17] of the West Virginia Rules of Civil Procedure or through its

---

[16] Rule 26(e) of the West Virginia Rules of Civil Procedure provides as follows:

*Supplementation of responses*. — A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement the response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement that party's response with respect to any question directly addressed to:

(A) The identity and location of persons having knowledge of discoverable matters, and

(B) The identity of each person expected to be called as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the expert's testimony.

. . .

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

If supplementation is not made as required by this Rule, the court, upon motion or upon its own initiative, may impose upon the person who failed to make the supplementation an appropriate sanction as provided for under Rule 37.

[17] Rule 37(b), in part, of the West Virginia Rules of Civil Procedure provides that:

(2) Sanctions by court in which action is pending. — If a party or an officer, director, or managing agent of a party or a person designated under Rules 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit

13

discovery, including an order made under subdivision (a) of this rule or Rule 35, or if a party fails to supplement as provided for under Rule 26(e), or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence;

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(D) In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

(E) Where a party has failed to comply with an order under Rule 35(a) requiring that party to produce another for examination, such orders as are listed in subparagraphs (A), (B), and (C) of this paragraph, unless the party failing to comply shows that that party is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Furthermore, Rule 37(d) of the West Virginia Rules of Civil Procedure provides that:

(d) *Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection.* — If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, or (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule. Any motion specifying a failure under paragraphs (2) or (3) of this subdivision shall include a certification that the movant has in good faith conferred or attempted to confer with the party failing to answer or respond in an effort to obtain such answer or response without court action. In lieu of any order or in addition thereto, the court shall require the party failing to act or the attorney advising that party or both to pay the reasonable

14

"inherent powers to exercise its authority." *See* Syl. Pt. 1, *Bartles*, 196 W. Va. 381, 472 S.E.2d 827. However, "[t]he same general process regarding imposition of sanctions applies whether a trial court is proceeding under the authority of rule, statute or its inherent authority." *Richmond Am. Homes of W. Va., Inc.*, 226 W. Va. at 112, 697 S.E.2d at 148. As such, any sanction imposed must be "fashioned to address the identified harm caused by the party's misconduct" and must be just. *See generally*, *Bartles*, 196 W. Va. 381, 472 S.E.2d 827.

Here, at the time the petition for a writ of prohibition was filed, the circuit court had yet to enter an order regarding the reopening of limited discovery and the monetary sanctions.[18] The analysis the circuit court underwent during the hearing as to why it was going to order monetary sanctions is brief, to say the least, and somewhat vague. It appears that the circuit court reasoned that the Board's fact and expert witness disclosures were untimely. Mr. Hatfield filed his fact and expert witness disclosures on October 5, 2020, and the Board filed its disclosures on October 16, 2020. Pursuant to the scheduling order, the Board had ten days to file after Mr. Hatfield. Furthermore, Rule 6 of the West Virginia Rules of Civil of Procedure provides that

> [*i*]*n computing any period of time* prescribed or allowed by these rules, by the local rules of any court, *by order of court*, or by any applicable statute, *the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday or a legal holiday. When the period of time prescribed or allowed is fewer than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation.* As used in this rule and in Rule 77(c), "legal holiday" includes New Year's Day, Martin Luther King's Birthday, Lincoln's Birthday, Washington's Birthday, Memorial Day, West Virginia Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, Christmas Day, any day on which a general, special or primary election is held in the state or in the county in which the circuit court sits, and any other day appointed as a holiday by the Governor or by the President of the United States as a day of special observance or thanksgiving, or a day for the general cessation of business.

(Emphasis added). Because the time prescribed by the order was fewer than eleven days, and included the legal holiday of Columbus Day, the Board's fact and expert witness disclosures were

---

expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

The failure to act described in this subdivision may not be excused on the ground that the discovery sought is objectionable unless the party failing to act has applied for a protective order as provided by Rule 26(c).

[18] To date, there has been no supplementation of the appendix record with an order from the circuit court by either party.

15

timely filed. Accordingly, the primary reason the circuit court utilized for imposing monetary sanctions was incorrect. Moreover, the circuit court considered all of Mr. Hatfield's pre-trial motions, which resulted in monetary sanctions, yet failed to consider any of the Board's pre-trial motions. Finally, the circuit court already had provided a remedy for any potential misconduct by continuing the trial date and reopening discovery to allow these limited depositions to occur. Consequently, we find that the monetary sanctions are not just and reasonable under the limited circumstances of this matter and that the circuit court abused its discretion in ordering the Board to pay the costs of any additional depositions and the second mediation. For the foregoing reasons, we deny the requested writ of mandamus and grant, in part, and deny, in part, the requested writ of prohibition.

Writ of mandamus denied.

Writ of prohibition granted, in part, and denied, in part.

**ISSUED:** November 16, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton

16